## WEILBACHER et al. v. MERRITT, Collector of Customs.

(*Circuit Court, S. D. New York.* October 29, 1888.)

1. CUSTOMS DUTIES—CLASSIFICATION—GLUCOSE AND GRAPE SUGAR.

    Glucose and grape sugar are not dutiable as "burnt starch or gum substitute," as provided for in Rev. St. U. S. § 2504, Schedule M, but are properly assessed as non-enumerated manufactures, under section 2516.

2. SAME—ACTION TO RECOVER EXCESS—PROVINCE OF JURY.

    The question whether a particular importation, on which a duty has been imposed, is properly included in a particular name of a substance as employed in the tariff laws, is for the jury, and not the court.

3. SAME—MEANING OF TERMS.

    The definition of the terms "gum substitute, or burnt starch," as used in the tariff law, (Rev. St. U. S. § 2504,) is for the jury, where there is evidence of a trade usage of one of the terms; the word "or" in the statute possibly having been used to refer one phrase to the other for explanation.

4. SAME.

    The terms "gum substitute" and "burnt starch" are to receive the meaning given them in ordinary commercial operations, unless a trade meaning different from that in ordinary use is established by a preponderance of evidence.

5. SAME—SIMILITUDE CLAUSE.

    Rev. St. U. S. § 2499, imposing a tariff on articles not theretofore enumerated, "which bear a similitude, either in material, quality, texture, or the use to which they may be applied," to any enumerated article, does not require that the resemblance should be in all of the four particulars mentioned; but the similitude must be a substantial one, importing not merely adaptability to sale as a substitute, but referring rather to the employment of the article, or its effect in producing results.

6. SAME—PRESUMPTION—ACTS OF COLLECTOR.

    The presumption is that the collector of customs acted rightly in imposing a duty on imports, and the burden is on one contesting the validity of the duty, to show that it was not properly imposed under the tariff laws.

At Law. Action to recover back alleged excessive duties.

The plaintiffs, Paul Weilbacher and another, in the years 1880 and 1881 imported into the port of New York certain importations of glucose and of grape sugar. These goods were classified for duty by the defendant, Edwin A. Merritt, collector of customs, at 20 per cent. *ad valorem*, as non-enumerated manufactures, under section 2516 of the Revised Statutes. The plaintiffs, however, claimed that the proper rate was but 10 per cent. *ad valorem*, on the grounds: *First*, that the importations were actually burnt starch and gum substitute, and therefore dutiable at the latter rate, which is imposed upon burnt starch or gum substitute by Schedule M, § 2504, Rev St.; or, *second*, that they bore such a similitude in the material, quality, texture, and use with burnt starch or gum substitute that by the operation of section 2499 of the Revised Statutes they were properly dutiable at the rate borne by burnt starch or gum substitute. This action was brought to recover the difference between 20 and 10 per cent. The plaintiffs adduced testimony tending to show that both glucose and grape sugar, on the one hand, and the gum substitute or burnt starch of commerce, were starch products, and were produced by the application of heat to starch; that chemically they were alike; that dextrine, which is gum substitute, as it appears chemically

in glucose, is of use in brewing; and that, further, the term "burnt starch" as used in the tariff act, was not a commercial term, and that therefore the articles in question, being starch acted upon by heat, were actually burnt starch, or were so like it in material and quality as to be dutiable at the same rate with it by similitude. The defendant adduced testimony tending to show that although "burnt starch" was not a generally used term in the trade and commerce of this country, still it was used, and whenever used it was used to designate "gum substitute," which was also interchangeably known as "dextrine," or "British gum;" that maltose is a variety of sugar; and that in the manufacture of glucose chemically, dextrine appears first, then maltose, and then chemical glucose, which is called "dextrose;" that, so far as chemical formulas are concerned, dextrine differs as much from glucose as glucose differs from cane sugar; that glucose and tapioca have the same formula, and dextrine and cotton the same formula; that glucose is easily fermentable, and dextrine will not ferment at all; that glucose reduces Fehling's copper solution at once, and the dextrine will not reduce it at all; that glucose is crystallizable, and dextrine is not; that non-converted starch is found in dextrine, and is never found in glucose; that the main use of glucose, or grape sugar, is as a ferment in beer, and in the manufacture of confectionery, and for its saccharine qualities, whereas the dextrine of commerce (that is, gum substitute, or burnt starch) is always used as an adhesive, in the manufacture of mucilage, such as we use on postage stamps and envelopes, and for fastening colors in calicoes and wall-papers, and as a size, and for surgical dressing; that in all the uses to which glucose or grape sugar were put, dextrine was not used, and *vice versa;* that glucose, or grape sugar, is edible, and dextrine is not; that in the manufacture of commercial dextrine, or gum substitute, the object was to produce an article with as little glucose in it as possible, and conversely; that in the manufacture of commercial glucose, or grape sugar, the object was to obtain a material with as little dextrine in it as possible.

*Stephen G. Clarke* and *Edwin G. Smith,* for plaintiffs.

*Stephen A. Walker,* U. S. Atty., and *Macgrane Coxe,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*) This case has taken some time to present, but as I shall not undertake to review the evidence, and as the law of the case lies in a narrow compass, I need detain you but little longer. In these tariff cases it is a fact for the jury to decide whether the imported article is or is not within the designation in the tariff act, and a dutiable article; it is not a question of law for the court. *Lawrence* v. *Allen,* 7 How. 797. Except, therefore, to instruct you as to what the statutes provide touching importations like these in suit, I shall leave the case for you to determine, under the testimony. The tariff acts, as you know, are long and complicated documents. With more or less careful phraseology they undertake to cover every article upon which the framers intend that duties shall be levied. They enumerate very many articles, using their specific names. In other cases they refer to classes or groups

of articles by some general clause or phrase covering a great many varieties. Again, lest notwithstanding the use of all these enumerations they should allow something to slip, they provide various catch-all clauses, intended to hold whatever residuum may be left. One of these catch-all clauses is this, (section 2516 of the Revised Statutes:)

"There shall be levied, collected, and paid * * * on all articles manufactured in whole or in part, not herein [that means, in the tariff act] enumerated or provided for, a duty of twenty per centum *ad valorem.*"

It was under this clause that the collector imposed the duty in this case. As a public officer discharging public functions, it is, of course, to be presumed that he acted rightly, and the burden, therefore, is upon the plaintiffs to satisfy you either that these importations are enumerated, or are provided for in this tariff act otherwise than in this catch-all clause. That is the burden which they assume. The importations in this case are, as you have seen, some of them in a solid, and others in a liquid, form. They are called in the invoices, "Crystal Syrup," or "Trauben Zucker." They have been called by the witnesses, and in the arguments of counsel, "Grape Sugar," or "Glucose." Now, in the tariff act there is no provision at all with regard to glucose, or grape sugar, or trauben zucker, or crystal syrup, but the plaintiffs say that their importations are nevertheless enumerated in the statute, and they refer to a clause in Schedule M, which is this: "Gum substitute, or burnt starch, ten per centum *ad valorem.*" Of course, if these importations are gum substitute, or burnt starch, that ends the case, and the plaintiffs are entitled to a verdict; or if one of them is and one is not, they would be entitled to a verdict for the proportionate amount, whichever the case might be. Now, it is for you to say, under the evidence, whether these importations, or any of them, are in fact gum substitute, or burnt starch; and to assist you in reaching that conclusion the plaintiffs' evidence has been introduced, and testimony given as to the materials of which they are composed, and their methods of manufacture, and you have tasted and handled them yourselves. Before classing these particular importations, however, it becomes necessary to ascertain what is the meaning of the words "gum substitute," or "burnt starch," in that section of the tariff act. To aid in defining these words the evidence has in part been introduced. Where words used in a statute are not technical, either as having a special sense by commercial usage, or as having a scientific meaning different from their popular meaning, *i. e.*, when they are words of common speech, their interpretation is for the court. *Marvel* v. *Merritt*, 116 U. S. 11, 6 Sup. Ct. Rep. 207. The ordinary meaning of the words "burnt starch" is starch which has been burned; the ordinary meaning of the words "gum substitute" is a substitute for gum. Evidence touching trade usage of one or the other of these terms has been introduced here, and for that reason, and because the use of the conjunction "or" in the statute may, under the rule suggested by the supreme court in the case of *Arthur* v. *Cumming*, 91 U. S. 362, be taken to indicate an intention of congress to refer to the one phrase in explanation of the other, I shall leave the whole question as to the determination of the definition, as well as the deter-

mination as to the articles, to you. Words in English speech and writing—in fact, in any speech and writing—are used in different ways; sometimes loosely, and sometimes with great discrimination; sometimes in a broad sense, and sometimes in a very restricted sense. They are used technically, colloquially, and scientifically. As to their use in these statutes we have a rule repeatedly and very clearly laid down by the supreme court, and I shall read to you from some of the decisions of that tribunal a statement of that rule, which is the one you are to follow in defining the words "gum substitute," or "burnt starch," as you find them in this statute.

The popular or received import of words furnishes the general rule for the interpretation of public laws as well as of private and local transactions, and when the legislature adopts such language to define and promulgate their action, the just conclusion must be that they not only themselves comprehend the meaning of the language they have selected, but have chosen it with reference to the known apprehension of those to whom it is delivered, and for whom it is designed to constitute a rule of conduct, namely, the community at large. *Maillard* v. *Lawrence*, 16 How. 251; *Arthur* v. *Morrison*, 96 U. S. 108. In cases like this, moreover,—that means in tariff cases,—the law recognizes the authority of those engaged in commerce, and adopts necessarily and as conclusive the meaning which they have given to words and phrases employed in their daily business. *Recknagel* v. *Murphy*, 102 U. S. 197. The object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. Whether a particular article was designated by one name or another in the country of its origin, or whether it were a simple or a mixed substance, was of no importance, in the view of the legislature. It applies its attention to the description of articles as they derive their appellations in our own market, in our domestic as well as our foreign traffic, and attempts no other classification than that derived from the actual business of human life. Laws imposing duties on importations are intended for practical use and application by men engaged in commerce. * * * And the language adopted by the legislature, particularly in the denomination of articles, should be construed according to the commercial understanding of the terms used. *Elliott* v. *Swartwout*, 10 Pet. 147. Or, as elsewhere expressed: The denomination of merchandise subject to the payment of duties is to be understood in a commercial sense, although it may not be scientifically correct. All laws regulating the payment of duties are for practical application to commercial operations, and are to be understood in a commercial sense. *U. S.* v. *Casks of Sugar*, 8 Pet. 277. It is under this rule that you are, in the first place, to define the phrase in the tariff act,—"gum substitute, or burnt starch." In the absence of any evidence to the contrary, it will of course be assumed that any particular word or phrase is used in commerce with the same meaning as in the ordinary language of the community at large, and if it is claimed to have a trade meaning different from the general understanding, the party claiming that such difference exists must establish his claim by a fair

preponderance of proof. Bearing these rules in mind, you are to determine, in the first place, what did congress mean by the words, "gum substitute, or burnt starch?" and, secondly, are these importations in fact gum substitute, or burnt starch, within the meaning of those words, as used by congress in this tariff act? Should you reach the conclusion that they are burnt starch, or gum substitute, your verdict will be for the plaintiffs. Should the plaintiffs, however, fail to convince you that these importations are in fact gum substitute, or burnt starch, as the words are used here, they still claim to recover under another clause of the tariff act, which is this:

Sec. 2499. "There shall be levied, collected, and paid on each and every non-enumerated article which bears a similitude either in material, quality, texture, or the use to which it may be applied to any article enumerated in this title as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned."

This clause does not require that the resemblance should be in all four of the particulars mentioned,—material, quality, texture, and use; and as it may sometimes happen, of course, that an article may resemble in one particular one enumerated article, and in another particular another enumerated article, the following clause is added in the section:

"And if any non-enumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied, collected, and paid on such non-enumerated article, the same rate of duty as is chargeable on the article which it resembles paying the highest duty."

That is the similitude clause. Now, the similitude referred to in the statute must be a substantial similitude, importing, not merely an adaptability to sale as a substitute for the article to which it is sought to be assimilated, but referring rather to its employment, or its effect in producing results. Nor is it enough if an imported article bears more resemblance to one enumerated article than to another, because it might, notwithstanding that circumstance, bear no substantial resemblance to either. *Murphy* v. *Arnson,* 96 U. S. 131. Now, the plaintiffs claim that their importations most resemble gum substitute, or burnt starch; or, rather, they claim that their importations substantially resemble— that they bear a substantial similitude to—gum substitute, or burnt starch, and that they resemble those articles, or that article, more than they do any other article. The defendants, on the contrary, contend that they resemble particularly no one article. They say that, as to any supposed resemblance to gum substitute or burnt starch, they do not resemble that any more than they do sugar. You have heard the testimony, which has at great length described the material, quality, texture, and use of gum substitute, of burnt starch, of sugar, and of all these importations. If from that evidence you find that the importations bear a substantial resemblance to gum substitute, or burnt starch, and resemble that article more than sugar, the plaintiffs are entitled to recover the full amount of their claim, or in proportion for the solids and

liquids, if you should find any difference between them. If you should find, however, that they bear a substantial resemblance to sugar, and that they resemble sugar more than they do burnt starch, or gum substitute, then the defendant is entitled to your verdict, because the plaintiffs have failed to show that they most resemble an enumerated article which is assessed at a lower rate of duty than the collector exacted on these importations; and in fact, under his protest, he could not prove a resemblance to anything other than gum substitute, or burnt starch. If you arrive at the conclusion that these importations bear a substantial resemblance to gum substitute, or burnt starch, and that they also bear a substantial resemblance to sugar, and that they equally resemble both of those substances; then again your verdict must be for the defendant, because of a failure to prove that it most resembled the article paying the lowest duty. Of course, if you arrive at the conclusion that it does not bear a substantial similitude to either of the articles, in that case your verdict also must be for the defendant.

Now, then, to recapitulate: In the first place, if you are satisfied that those importations are in fact burnt starch, or gum substitute, as the words are used in this act of congress, determining their meaning in this act according to the rules which I read to you from the supreme court decisions, then your verdict must be for the plaintiffs. If you are not satisfied that they are in fact burnt starch, or gum substitute, within the meaning of the tariff act, then, if you are satisfied that these importations bear a substantial similitude to gum substitute, or burnt starch, and resemble that substance more than they do sugar, then your verdict must be for the plaintiffs. Should you be satisfied, however, from the evidence, that they bear a substantial resemblance to sugar, and resemble sugar more than they do burnt starch, or gum substitute, or equally as much as they do gum substitute, or burnt starch, then your verdict must be for the defendant; and if you are satisfied that they bear a substantial resemblance to neither, then your verdict must be for the defendant.

Verdict for defendant.