SYKES *v.* MAGONE.

*(Circuit Court, S. D. New York. April 8, 1889.)*

1. CUSTOMS DUTIES—MANUFACTURES—NON-ENUMERATED ARTICLES—SIMILITUDE.
  The similitude either in material, quality, texture, or the use to which it may be applied, that a non-enumerated manufactured article must bear to an enumerated article chargeable with duty in order to subject the former article to the same rate of duty which is levied and charged on the latter article, must be a substantial similitude, not merely an adaptability to sale as a substitute for the latter article, but representing either its employment, or its effects in producing a result.

**2. SAME.**

Such also must be the resemblance that a non-enumerated manufactured article must equally bear to two or more enumerated articles on which different rates of duty are chargeable in order to subject the former article to the same rate of duty as is chargeable on the one of the latter articles which it resembles paying the highest duty.

**3. SAME—NON-ENUMERATED ARTICLES—GENERAL PROVISION.**

If a non-enumerated manufactured article bears no substantial similitude to an enumerated article, or no substantial resemblance to two or more enumerated articles, chargeable with duty, and is not provided for under any of the other catch-all clauses of the tariff act, it is dutiable under the general provision for non-enumerated manufactured articles

At Law.

The plaintiff on the 3d and 12th of February, 1886, made two importations of "carmine of Persian berry extract." These importations were classified by the collector as non-enumerated manufactured articles, dutiable at the rate of 20 per cent. under the tariff act of March 3, 1883, and duty at that rate was duly exacted thereon. Against this classification and this exaction plaintiff protested, claiming that these importations were dutiable at the rate of 10 per cent. *ad valorem,* on the ground that they were extracts and decoctions of dyewoods, or berries, advanced in value by manufacture; or, that they assimilated either to such extracts and decoctions, or to such berries. This act (Heyl, par. 84) provides that "logwood or other dyewoods, extracts, and decoctions of" shall be subject to a duty of 10 per centum *ad valorem.* This act (Id. par. 94) also provides that "all barks * * * berries * * * used expressly for dyeing, which are not edible, but which have been advanced in value or condition by refining or grinding, or by other process of manufacture, not specially enumerated or provided for in this act," shall be subject to a duty of 10 per centum *ad valorem.* This act (Id. par. 87) further provides that " colors and paints, including lakes, whether dry or mixed, or ground with water or oil, and not specially enumerated or provided for in this act," shall be subject to a duty of 25 per centum *ad valorem.* This act (Id. pars. 822–825) also further provides that "there shall be levied, collected, and paid on each and every non-enumerated article which bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this title as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles on which different rates are chargeable, there shall be levied, collected, and paid on such non-enumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest duty; and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which the component material of chief value may be chargeable. If two or more rates of duty should be applicable to any imported article, it shall be classified for duty under the highest of such rates: provided," etc. This act still further provides (Id. par. 837) that "all

articles manufactured in whole or in part not herein enumerated or provided for" shall be subject to a duty of 20 per centum *ad valorem.* At the trial of the case, plaintiff's testimony tended to show that the "carmine of Persian berry extract" was made from "Persian berries," with a metallic base, such as salts of tin, but that it was not a "lake;" that a "lake" and a "carmine" were different articles; "carmine of Persian berry extract" was used for dyeing and for printing calicoes and wall paper and making paints; that extracts and decoctions of logwood and other dyewoods were used for dyeing, and with a metallic base could be used for printing. Defendant's testimony tended to show that "extract of Persian berries" was first made from "Persian berries;" that "the carmine of Persian berry extract" was made from such extract by adding generally the salts of tin, because that gives the brightest results, precipitates the color, and changes it to a soluble color; that in this country, on March 3, 1883, and prior thereto, "lakes" were made from extracts and decoctions in the same way as the "carmine of Persian berry extract;" that "carmine of Persian berry extract" was used for calico printing, and sometimes for printing wall paper; that the "extract of Persian berries" could be used for dyeing, and extracts and decoctions of logwoods and other dyewoods were used for dyeing and making "lakes;" but that neither of these last two mentioned extracts and decoctions, as such, were generally used for printing; and that "carmine of Persian berry extract," as such, could not be used for dyeing. At the close of the case plaintiff abandoned his claim that the importations in suit were dutiable under the provision for berries contained in the aforesaid paragraph 94.

*Edward Hartley,* for plaintiff.

*Stephen A. Walker,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally charging the jury, after stating the facts as above.*) There are a number of articles as to which no duty is to be paid. Those figure on the free list. With regard to about everything else which comes here, congress has undertaken to prescribe the specific rate of duty which it shall pay. Of course to do this by a verbal enumeration of every known article, whether a natural growth or a product of manufacture, would be practically impossible. So, after enumerating with greater or less detail, and by special or general terms, such articles as it occurs to them to enumerate in that way, the framers of these tariff acts have devised various catch-all clauses, in order to prevent any articles, which should in their judgment pay duty, from slipping through. One of these catch-all clauses is known as the "Similitude Clause." It provides that if an article is brought to one of our ports of entry, which is not enumerated by general or special name anywhere in the long lists of dutiable articles, then inquiry shall be made as to whether it bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in these several lists. Further, the same section provides that if the article be found to equally

resemble two different articles on these lists, bearing different rates of duty, then the rate of duty assessed upon the article shall be that which is assessed on the higher of the two articles to which it bears a similitude. Finally, in case all the other catch-all clauses (for there are others, to which I need not refer) should fail to hold the article, there is a general provision that upon every manufactured article not enumerated or otherwise provided for in the act there shall be a duty of 20 per cent. That was the duty which the collector imposed in this particular case. Now, the question before you will be determined by the application of this similitude clause, or by your finding that it cannot be applied to the case in hand. The similitude, which the act refers to, is a similitude either in material, quality, texture, or the use to which the article may be applied. You will understand that the similitude referred to in the act must be a substantial similitude, not merely an adaptability to sale as a substitute for the article to which it is said to be assimilated, but representing either its employment or its effect in producing results. Nor is it enough that the imported article bears more resemblance to one enumerated article than to another, because it might not bear any substantial resemblance to either. The two clauses in the tariff act to which it is contended by one side or the other that this article bears a substantial resemblance are those providing, the one for logwood, and for extracts and decoctions of logwood, and other dyewoods, and the other for colors and paints, including lakes, whether dry or mixed. The definitions of the dictionary with regard to these three words should perhaps be read to you, for, in the absence of any testimony as to a specific and peculiar meaning in trade and commerce, it will be assumed that the words are used in trade with the same meaning as that in which they are used in every day speech; and for that meaning when we are at a loss for it, we usually consult the dictionary. According to the dictionary, a "decoction" is "an extract prepared by boiling something in water." An "extract" is "anything drawn from a substance by heat, solution, distillation, or chemical process, as essences, tinctures, and the like." A "lake" is "a compound of animal or vegetable coloring matter and a metallic oxide." Besides these definitions you have had testimony from those in the trade, and from chemists, as to the use to which this imported article is put, and as to its chemical composition. From that testimony, bearing these definitions in mind, you are to determine, in the first place, whether it bears a substantial resemblance to either of these groups of articles,—that is, either to extracts, and decoctions of logwood and other dyewoods; or to colors and paints, including lakes, whether dry or mixed. Of course you will have to be satisfied that the resemblance that it bears is a substantial one; and you will feel under no constraint in finding a resemblance where you have doubt as to whether or not it exists, in order that the article may not escape payment of duty, because, as I have said before, there is another and final clause which provides for all manufactured articles not covered by the earlier clause. Therefore, you will determine, in the first place, whether it bears a substantial resemblance to either. If you come to the conclu-

sion that it bears a substantial resemblance to extracts and decoctions of logwood, and not to lakes, your verdict will be for the plaintiff. Should you, on the other hand, reach the conclusion that it bears a substantial resemblance to colors and paints, including lakes, whether dry or mixed, and not to dyewood, extracts, and decoctions of logwood, then your verdict will be for the defendant. If you reach the conclusion that it bears a substantial resemblance to both, but are unable to determine as to which it resembles most,—in other words, if it resembles both equally, or has a substantial resemblance to both,—then again your verdict must be for the defendant. Finally, should you reach the conclusion that it bears a substantial resemblance to neither, then again your verdict must be for the defendant, because the article in the latter case will be covered by the final clause as a non-enumerated manufactured article.

The jury rendered a verdict for the defendant.