THOMASS v. UNITED STATES (No. 30).[1]

GLOVES MADE OF CELLULOSE OBTAINED FROM COTTON WASTE.

Gloves made of yarn composed of cellulose filaments obtained from cotton waste by subjecting this to a chemical treatment are not articles of wearing apparel to be classed by similitude as silk, but are to be classed by similitude as wearing apparel, value in chief of cotton or other vegetable fiber, and were dutiable as such under paragraph 314, tariff act 1897.

United States Court of Customs Appeals, November 30, 1910.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6718 (T. D. 28759).

[Reversed.]

Brooks & Brooks (F. W. Brooks, jr., on the brief) for appellants.

D. Frank Lloyd, Assistant Attorney General (Charles Duane Baker on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

This is an appeal from the decision of the Board of United States General Appraisers, and was removed to this court from the United States Circuit Court for the Southern District of New York.

The appellants in 1908 imported certain gloves which were assessed by the collector as dutiable by similitude as wearing apparel made of

silk, under paragraph 390 of the act of July 24, 1897, the material part of which is as follows:

390. Laces, * * * and articles of wearing apparel of every description, including knit goods, made up or manufactured in whole or in part by the tailor, seamstress, or manufacturer; all the above-named articles made of silk, or of which silk is the component material of chief value, not specially provided for in this act, * * * sixty per centum ad valorem: * *. *.

The board sustained the collector and overruled the protest except that as to certain "silk-finish lisle Milanese" gloves which were admitted to have been returned in error, the protest was sustained. We do not understand that the correctness of this part of the board's decision ·is questioned.

It is agreed that the yarn of which the gloves are made is composed of filaments manufactured from cellulose which was obtained from cotton waste by subjecting the same to a chemical treatment. Cotton is composed of 90 per cent cellulose.

The appellants contend that under the conceded facts the gloves are made of vegetable fiber, and therefore directly dutiable under paragraph 314 of the same act, the material part of which is as follows:

314. Clothing, ready-made, and articles of wearing apparel of every description, including neckties or neckwear composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise provided for in this act, fifty per centum ad valorem: * * *

It therefore becomes necessary to consider the meaning of the words "vegetable fiber," as used in paragraph 314, and also to refer to cellulose.

"Fiber" is defined in the Century Dictionary as:

A thread or filament. Any fine thread-like part of a substance as a single natural filament of wood, cotton, silk, etc.

In a collective sense a filamentous substance, more generally any animal, vegetable, or even mineral substance, the constituent parts of which may be separated into or used to form threads for textile fabrics.

In Murray and Bradley's New English Dictionary as:

One of a thread-like filament of organic structure which forms a textile or other material substance.

All plants are chiefly composed of a natural substance called cellulose. This is an essential constituent of the primary wall membranes of plant cells. (See Century Dictionary, "Cellulose.")

As its spelling would indicate, cellulose in form is composed of many cells or cavities.

Cellulose is obtained from plants by treating their substance with chemicals which breaks down the plant structure or fibers and separates the cellulose from the other materials composing the same.

In the case at bar the cellulose, after having been chemically obtained from the cotton waste, is by mechanical treatment formed into small threads or filaments, which in turn are made into yarn from which the gloves in question are manufactured, so that the fiber—that is, the thread or filament of which the gloves are made—is not a true vegetable fiber in its natural form or shape, but is a new manufactured fiber, although composed of the same vegetable substance, cellulose, which in a different form was the main element composing the vegetable fiber in a state of nature.

We do not think this manufactured fiber is the vegetable fiber referred to under paragraph 314, and so hold that the gloves are not dutiable thereunder as being included in the specific enumeration of wearing apparel composed of vegetable fiber.

It is not like the case of mercerized cotton, where the natural cotton fiber is chemically treated to the extent of producing a change in its appearance without breaking down or destroying the fiber itself.

The appellants further contend that these gloves should be held dutiable by similitude to wearing apparel in chief value of cotton or other vegetable fiber under paragraph 314.

We learn from the record that the yarn of which these gloves are made is designated as artificial silk; that the gloves are very similar in quality and texture to mercerized cotton gloves and are generally known, bought, and sold as such, although sometimes called and sold as "silkette" or "silk-finish" gloves.

It is not contended that mercerized cotton gloves are other than wearing apparel made of cotton or vegetable fiber within the meaning of paragraph 314.

The recognized doctrine is invoked that if an article is found not enumerated in the tariff laws, then the first inquiry is whether it bears a similitude either in material, quality, texture, or use to which it may be applied, to any article enumerated as chargeable with duty and if it does, and the similitude is substantial, it is deemed to be the same and to be charged accordingly.

The appellants in effect insist that, being composed of a vegetable substance, the importation in respect of its quality bears a greater resemblance to apparel made of vegetable fiber than it does to apparel made of silk, which, admittedly, is not a vegetable fiber; that in respect of quality and texture the gloves more resemble mercerized cotton gloves than silk gloves, while in respect of use they may well be said to substantially resemble either gloves made of silk or cotton.

The Government contends that because the yarns from which they are made is artificial silk, it follows that the gloves more resemble those made of silk than those made of vegetable fiber. We are unable to agree with this contention.

An artificial substance is one made in imitation of another or as a substitute for it. The words "artificial silk" do not *per se* suggest such a resemblance as necessarily brings the article so described within the application of the similitude section of the tariff act. They are but a name for something that is an imitation of or is a substitute for real silk.

We think one vital fact which makes against the Government is that these gloves are made of a vegetable substance.

Manifestly yarn or gloves made of cellulose, a vegetable substance, bear a much greater similitude, so far as material is concerned, to a vegetable fiber than to a silk fiber, and the gloves, as we understand the record, and in fact it is not otherwise contended, in respect of quality and texture, more resemble cotton gloves than silk gloves.

We are clear that the appellants satisfy the requirements of the doctrine invoked above, and that the gloves are dutiable by similitude under paragraph 314 as wearing apparel in chief value of cotton or other vegetable fiber.

The case of Hardt, Von Bernuth & Co. *v.* United States (146 Fed. Rep., 61), decided in 1906, is much like the case now before us. There the Circuit Court of Appeals for the Second Circuit in a well-reasoned opinion came to a similar conclusion.

See also Patterson & Co. *v.* United States (166 Fed. Rep., 733).

We have given due consideration to the case of John Wanamaker *v.* United States (175 Fed. Rep., 900; T. D. 28217), which is relied upon as a controlling authority in favor of the Government. If such be its interpretation, we are not disposed to follow it.

There the record as set forth in the decision of the court seems to have presented no question for determination other than what should be done when there was nothing to pass upon except the protest itself. No evidence germane to any issue raised by the protest had been offered, and the claim presented to the court was upon a different article than that covered by the protest.

The merits of the case were not discussed in the opinion, and, as we understand, there was nothing before the court which would warrant a course different than what was adopted, namely, to affirm the decision of the board.

We do not regard it as an authority upon the question before us.

The decision of the Board of General Appraisers is reversed, except as to the protest relating to "silk-finish lisle Milanese" gloves, and as to that protest it is *affirmed.*