ISLER & GUYE *et al. v.* UNITED STATES (No. 1315).[1]

BRAIDS RESEMBLING COTTON NOT PYROXYLIN ARTICLES.

The imitation horsehair braids of the importation were not shown to resemble pyroxylin or its compounds, or any article of which pyroxylin is the component material of chief value. On the contrary, in texture, quality, and use they resemble braids of cotton, and since they were dutiable by similitude, they were dutiable as cotton braids.

United States Court of Customs Appeals, April 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34047 (T. D. 33872).

[Affirmed.]

*Walden & Webster* for appellants.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* special attorney, of counsel; *Martin T. Baldwin,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The several appeals in this case relate to artificial or imitation horsehair braids used in the manufacture of hats. The importations were made while the tariff act of 1897 was in force and the question therefore is the proper classification of the goods under the provisions of that act. Assessment was made by the collector at the rate of 60 per cent ad valorem by similitude to silk braids under paragraph

---

[1] Reported in T. D. 34401 (26 Treas. Dec., 679).

390 of section 1 by force of the provisions of section 7 of the act, known as the similitude provision. The importers protested. The Board of General Appraisers, upon hearing, found the braids in respect to material, quality, texture, and use to more resemble cotton braids than articles made of pyroxylin, and therefore held them dutiable by similitude to cotton braids under paragraph 339 of section 1 by virtue of said section 7, from which judgment the importers alone appeal to this court.

The protests assert and here the importers rely upon the claim that these braids, instead of being dutiable as assessed by the collector or as held by the board, were dutiable by similitude under the provisions of paragraph 17 of section 1 in connection with said section 7 as articles of which pyroxylin is the component material of chief value. It is not claimed on the part of the Government that the collector's assessment was correct, but it urges here that the board reached the right conclusion and that its judgment should be affirmed.

In Thomass v. United States (1 Ct. Cust. Appls., 86; T. D. 31107) we considered the classification of gloves under the act of 1897 made of so-called artificial silk, which it was agreed was yarn composed of threads or filaments manufactured from cellulose obtained from cotton waste, and held that such gloves were dutiable by similitude under paragraph 314 as wearing apparel in chief value of cotton or other vegetable fiber rather than by similitude as articles of wearing apparel made of silk or of which silk was the component material of chief value under paragraph 390 of the same act.

In United States v. Cochran (3 Ct. Cust. Appls., 57; T. D. 32349) we held that untrimmed hats made of braids composed of strands of imitation horsehair were, by similitude, dutiable as cotton wearing apparel under paragraph 314 of the act of 1897 rather than by similitude as untrimmed ladies' hats of straw under paragraph 490 of the same act.

In Plummer v. United States (3 Ct. Cust. Appls., 229; T. D. 32539) artificial horsehair hat braids made of threads or filaments substantially of cellulose were, by similitude, held dutiable as braids composed wholly or in chief value of cotton or other vegetable fiber under paragraph 339 rather than by similitude under paragraph 409 of the act of 1897 providing for braids composed wholly of straw, chip, grass, etc.

In United States v. Eckstein (222 U. S., 130) the Supreme Court held that artificial or imitation horsehair in the shape of skeins or spools of yarn manufactured therefrom was dutiable by similitude as cotton yarn under paragraph 302, rather than as silk yarn under paragraph 385 of the act of 1897. It there appeared that the yarn was made of artificial threads or filaments of cellulose produced from cotton waste.

It will be observed that in the act of 1897 there was no express provision for artificial horsehair, and hence the doctrine of similitude was invoked in all the cases cited.

Cognizance is had by the importers' counsel of these decisions, and the correctness of the conclusions reached therein is not controverted upon the issues there presented, but, it is said, and such appears to be the fact, that in none of those cases was the issue raised as to the applicability of paragraph 17 in connection with section 7 of the act, and hence that the precise question now before us has never been before litigated or determined. This new issue, stated in the language of importers' counsel, is "whether the merchandise is more similar to pyroxylin braids than cotton braids." It is not, however, claimed, if this issue be decided adversely to the importers' contention, that there was error in the judgment below.

Paragraph 17 relates to collodion and all compounds of pyroxylin and articles of which either is the component material of chief value.

There is no question of commercial designation in the case, and the word "pyroxylin" must therefore be given its common meaning.

In the substance of the language of the Standard Dictionary pyroxylin is an explosive compound, prepared by steeping cellulose in a cold mixture of certain acids and afterwards washing it. Guncotton is also said to be a synonym for pyroxylin.

The importers' chemical expert, Dr. Berry, who testified in the case before the board and who was the only chemical expert called as a witness, said that pyroxylin was a low form of nitrocellulose, soluble in ether-alcohol; that it contained no cellulose as such, but was nitrocellulose, a different chemical compound than cellulose and having a different formula; that it had different physical characteristics than cellulose in that, among other things, it was inflammable, would be explosive under pressure, and was a low form of guncotton, from which it differed in being less highly nitrated.

Cellulose is a product of cotton, straw, or other vegetable fiber, of which it is an essential constituent, especially of cotton, which is said to be composed of about 90 per cent cellulose. It is obtained by chemically treating the plant growth in which it is found, thereby breaking down the natural structure or fiber and enabling the cellulose content to be segregated.

Dr. Berry, whose testimony is not controverted in any way, also testified that these braids are of two kinds, denominated by him as nonnitrated and denitrated; that the threads of which they are composed were both made from purified cellulose; that cellulose is obtained from cotton, straw, or any vegetable cellulose fiber; that the purified cellulose is brought into solution and squirted through a very small orifice into a solution which solidifies it, producing

the nonnitrated threads (what chemicals are used in dissolving the cellulose or in making the solution which solidifies these threads he did not state); that in producing the denitrated threads the purified cellulose is treated with nitric and sulphuric acids, forming a low-nitro compound; that this is dissolved in a suitable solvent, such as ether-alcohol, and then squirted in the same manner through an orifice into a solution which solidifies it; that this product is treated with other suitable chemicals which denitrates it, *i. e.*, causes it to revert back to cellulose; that the final products in both cases—that is, both the nonnitrated and denitrated threads—are over 99 per cent pure cellulose, practically identical, except in the appearance under the microscope, and identical in chemical constituents; that the denitrated threads are pyroxylin compounds before the last process—that is, the denitrating; that cotton is "almost altogether cellulose"; that pyroxylin can not be made without the use of cellulose; that collodion is pyroxylin in solution.

While the doctor did not specially so state, we assume from his evidence that the above processes are substantially continuous, and they appear to be very like if not identical with those mentioned by Dr. Joseph Bersch in his work "Cellulose, Cellulose Products, and Artificial Rubber," wherein the author describes the manufacture of artificial threads from cellulose and collodion, both of which are referred to as artificial silk, one of the processes employed in making these from collodion being known as Chardonnet's method, which is mentioned by the Supreme Court in the Eckstein case, *supra*.

Dr. Bersch also there states that threads manufactured from collodion would be of no practical use because a fabric made therefrom would in an infinitely short time be reduced to ashes by a spark falling upon it and that, therefore, they are denitrated, *i. e.*, reconverted into cellulose. The manner of such denitration as described by Dr. Berry appears to be substantially like that mentioned by Dr. Bersch, although much more fully detailed by the latter.

Restating the facts, without special regard to the various chemical processes employed in producing either class of these threads, it is apparent that cellulose is obtained by destroying the fiber of the cotton or other plant and segregating its cellulose content; that this cellulose is then purified and by various processes, mostly chemical, made into artificial threads, which are practically pure cellulose, in the making of which two methods are shown to have been employed, one involving more chemical processes than the other, perhaps common so far as the shorter method goes, but the result in each case is the same, namely, cellulose threads resembling those made of natural cotton fiber and as to material substantially identical therewith, in that all have cellulose as their principal component

material. These cellulose threads are then made into imitation horse-hair braids, in which condition they are imported. Pyroxylin is made from cellulose, but the chemical processes employed are more extended than those employed in making the nonnitrated and less extended than those employed in making the denitrated threads here, and there is nothing in the record which tends to show, nor is it claimed by importers' counsel, that in fact there are any braids or other articles composed of pyroxylin that are at all similar in quality, texture, or use to the braids which are the subject of these appeals.

Section 7 provides that—

Each and every imported article, not enumerated in this act, which is similar, either in material, quality, texture, or use to which it may be applied to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned.

At the outset it may be observed that *identity* of material precludes the applicability of the similitude provision, *i. e.*, as applied to the braids here if composed of pyroxylin, they would be directly dutiable under paragraph 17.

It has been frequently held and is admitted by the importers that similitude is a question of fact, the existence of which must be proven unless conceded. Here the similitude claimed by importers is not conceded, and, therefore, it is incumbent upon them to show that these hat braids more resemble pyroxylin, or some article of which it is the component material of chief value enumerated in the act, than they resemble braids made of cotton, as held by the board.

The importers' argument in substance is that, although these braids are actually neither cotton nor pyroxylin, they are much nearer to pyroxylin than cotton because cellulose is the immediate material of pyroxylin and of the nonnitrated braids, and that the denitrated braids more resemble pyroxylin because they are produced by a part of the same processes which yield pyroxylin, and have, in an intermediate chemical process, once assumed the form of pyroxylin or a compound thereof.

The relevant part of this contention, it will be observed, is founded upon similarity of *material* only. But in the *finished* state of these braids there is no substantial similarity of material to anything made of pyroxylin because there is no substantial similarity between cellulose and pyroxylin as materials. They are altogether different in physical characteristics and chemically they have no resemblance. The fact that pyroxylin can not be made without cellulose or that it is obtained therefrom by the same or similar processes as are the braids here does not change this conclusion, because it is the *result* and not the *means* which is important. The raw material for the threads *was* cellulose; the threads when finished *are* cellulose.

The manufacture of artificial threads from cellulose is undertaken not with the purpose of producing pyroxylin, but rather to obtain a thread resembling the natural fiber of cotton and which can be devoted to some of its many uses. This result has been achieved and a thread produced, the principal component material of which, like that of cotton, is cellulose. The fact that in the chemical processes employed pyroxylin or a compound thereof appears does not affect the question of similitude, because that condition disappears before the threads are finished.

We think, in respect of material, these hat braids more resemble braids of cotton than they resemble pyroxylin or braids of pyroxylin, if any there are, or any other article of pyroxylin shown to exist or of which we have knowledge.

In this connection it is proper to repeat that there is no evidence that there are pyroxylin braids, neither is there any evidence that there is any article made from pyroxylin which at all resembles either in quality, texture, or use the braids which are the subject of these appeals.

It has been held that the similitude of use contemplated by section 7 is a substantial similitude between the article for which it is claimed and one enumerated in the statute; that is, a similarity in its employment or its effect in producing results. Sykes v. Magone (38 Fed., 494), Murphy v. Arnson (96 U. S., 131), Weilbacher v. Merritt (37 Fed., 85), Rich v. United States (172 Fed., 293).

The application of this rule makes strongly against the importers, because they have failed to show that these braids, or the threads of which they are composed, either in employment or in effect in producing results, resemble pyroxylin or its compounds or any article of which either is the component material of chief value or have any adaptability in use as a substitute therefor. We are clear that similarity in respect of use to pyroxylin or its compounds is not shown.

As to similarity in use or as to similarity in quality and texture between these braids and braids composed of cotton, it is unnecessary to make extended discussion, because the similarity relied upon by importers does not relate to these three characteristics, and also because the cases first referred to in this opinion are sufficient authority for saying that, respecting texture, quality, and use, these braids composed of artificial horsehair closely resemble braids of cotton.

We find no error in the judgment of the Board of General Appraisers and it is *affirmed*.