(C. D. 80)

HARTMANN TRUNK CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 19, 1939)

*G. W. R. Wallace; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel), for the plaintiff.

*Joseph R. Jackson,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., dissenting.

McCLELLAND, Presiding Judge: The merchandise the classification of which is here in issue is described on the invoice as "rawhide leather." It was assessed with duty at the rate of 20 per centum ad valorem under the provisions of paragraph 1530 (b) (5) of the Tariff Act of 1930, and the protest claim is that duty should have been assessed at the rate of 10 per centum ad valorem under paragraph 1530 (a) of the same act, or, in the alternative, by amendment to the protest, that it should have been admitted to free entry under the provisions of paragraph 1765.

The pertinent parts of these paragraphs read as follows:

PAR. 1530. * * * (b) Leather (except leather provided for in subparagraph (d) of this paragraph), made from hides or skins of cattle of the bovine species:

* * · * * * * *

(5) * * * bag, case * * * leather, in the rough, in the white, crust, or russet, partly finished, or finished, 20 per centum ad valorem.

PAR. 1530. (a) Hides and skins of cattle of the bovine species (except hides and skins of the India water buffalo imported to be used in the manufacture of rawhide articles), raw or uncured, or dried, salted, or pickled, 10 per centum ad valorem.

[Free List] PAR. 1765. Skins of all kinds, raw, and hides not specially provided for.

It is noted at the outset that Government counsel concedes that the collector's classification of the merchandise directly as leather was erroneous, but it is contended that the merchandise is classifiable under paragraph 1530 (b) (5), *supra*, by virtue of the similitude clause in paragraph 1559 of the tariff act, which reads as follows:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned.

or, alternatively, that it is dutiable under the provision in paragraph 1558 of the same act for—

* * * all articles manufactured, in whole or in part, not specially provided for, * * * 20 per centum ad valorem.

From the trend of the testimony it is evident that the claim relied upon by protestant is that for duty at the rate of 10 per centum under paragraph 1530 (a). It is equally manifest from the record that the involved merchandise came from cattle of the bovine species.

Examination of samples of the imported merchandise received in evidence as Illustrative Exhibits A and B without objection shows that they consist of large pieces of material roughly in the size and shape of cow or steer hides and of uniform thickness.

The manner in which the merchandise at bar was produced was described by the witness Orthmann, who was duly qualified, as follows:

This product is produced from steer hides, which are received at the tannery in a green, salted condition. After they are received at the tannery, they are opened—they come in bundles; the bundle is opened—the hide is trimmed of any superfluous fleshy part, and is then soaked in water for a period of 18 to 20 hours, and thoroughly washed, after which it is run through a fleshing machine to remove any superfluous adipose tissue which may adhere to the flesh. After that it is unhaired, by means of a depilatory—in this instance lime, concentrated solution of lime. * * * the purpose of the liming is to loosen the hair, after which it is taken out of this lime solution and put through a machine which scrapes the hair off of the grain surface of the hide. It is then thoroughly washed and bated. * * * Bating is subjecting it to an action of a pancreatic enzyme, which

is, in part, a substance which removes the lime from the hide.  After the lime is removed from the hide by bating and washing, the hide is then leveled by means of a splitting machine to an even thickness.  The thickness is predetermined because of the layout of the hide.  For instance, the belly may be of a light weight—that is the term generally used, but we refer to thickness particularly— and if the belly is light, then the rest of the hide is leveled down to that same thickness.  After that the hide is dried by tacking it on to boards, and it is finished.  It is the finished product as you see it there.

There is no dispute that the foregoing processes do not change the hides into leather.  It is well settled that before resort may be had to the similitude clause it must be found that the merchandise is not enumerated in any of the paragraphs of the tariff act.  *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67, T. D. 32351.  It therefore follows that if the merchandise is provided for in either paragraph 1530 (a) or 1765, *supra*, as "hides" the application of the similitude clause is barred.

We are of the opinion that by reason of the processes to which the merchandise in issue was subjected before importation it was taken out of the category of "hides" and made into a material, viz, rawhide, as distinguished from hides.

The witness Orthmann, who was qualified as a consulting chemist in the leather industry, including the processing of hides and skins, stated unequivocally that Illustrative Exhibits A and B were not salted or pickled.  He defined a raw or uncured hide to be one in the condition as it comes off the animal's back, and a dried hide he described as one—

*  *  *  taken off the animal's back and hung up in the sun, usually rather often in a cupboard or under a canopy so as to effect an air current, so that the hide may dry properly.

In spite of the foregoing he stated that he considered Illustrative Exhibits A and B to be raw or uncured or dried hides for the reason that they had not been tanned or permanently changed into leather.

Notwithstanding this latter view we are satisfied that Congress in providing for hides in various conditions in paragraph 1530 (a) of the Tariff Act of 1930 intended to cover only such as would fall within the common meaning of the terms used, i. e., raw or uncured, or dried, salted, or pickled, and not within the technical meaning understood by the witness.

Further in support of its contention plaintiff's counsel cites in the brief filed in its behalf the cases *In re Booth & Co. et al.*, T. D. 20884 (G. A. 4388), and *In re John L. Vandiver et al.*, T. D. 21657 (G. A. 4574).  In the former of these cases it was held that sheepskins which had been limed to remove the wool and hair, washed, again limed and washed, and then trimmed, scraped, split, and pickled were "raw skins" within the meaning of that term as used in paragraph 664 of the Tariff Act of 1897.  In the latter case cattle and buffalo hides which had been limed to remove the hair were held to

be raw or uncured hides within the meaning of those terms as used in paragraph 437 of the Tariff Act of 1897.

A careful reading of the court's opinions in those cases, however, reveals that they were based on the fact that the skins had been—

\* \* \* simply preserved in pickle for the purpose of preventing putrefaction and for convenience of transportation.

Such is not the case here. The skins in issue were soaked, fleshed, unhaired, scraped, washed, bated, and split, all with the purpose of making material from which rawhide articles such as drumheads and noiseless gears might be made, or with which luggage might be covered.

The material, rawhide, is not enumerated anywhere in the Tariff Act of 1930. It is therefore proper to determine whether it is dutiable by similitude to bag or case leather provided for in paragraph 1530 (b) (5), *supra.*

In *Thomass* v. *United States*, 1 Ct. Cust. Appls. 86, T. D. 31107, the Court of Customs Appeals, speaking through Judge Barber, said:

The recognized doctrine is invoked that if an article is found not enumerated in the tariff laws, then the first inquiry is whether it bears a similitude either in material, quality, texture, or use to which it may be applied, to any article enumerated as chargeable with duty and if it does, and the similitude is substantial, it is deemed to be the same and to be charged accordingly.

and in *Paterson* v. *United States*, 166 Fed. 733, it was held that if similarity in any one of the four particulars, material, quality, texture, and use, is found it is sufficient to invoke the provisions of the similitude clause.

With regard to the use of the rawhide in issue witness Orthmann testified:

As they received the hides—they are usually received in rolls of this type—the rolls are opened and the hides are spread out flat, placed in a dry, fairly-cool room. After they are flattened out—they lay perfectly flat—they are removed from the pile and they are cut into the sizes that are required for covering luggage. These pieces are then dampened to make them flexible and workable at the edges and so on. After they are dampened properly they are covered with glue on the flesh side, and then applied to the case, which is usually a plywood box, and then the other part of the work is continued, that is, the sewing, the stitching, and putting on, etc.

With regard to the use of bag or case leather this witness testified on cross-examination:

X Q. What do they use bag leather for?—A. Bag leather is usually used to cover cases and used for making brief cases, which are flexible. It is tanned leather.

X Q. At any rate, it is used to cover cases—case leather?—A. Oh, yes. It is used for that purpose also.

X Q. And the merchandise before the court is used to cover cases?—A. Cover woodcases, yes, for luggage.

X Q. The same as leather is used?—A. Yes, sir.

It therefore appears that the rawhide in issue is used in the manufacture of rawhide luggage in the same manner that case leather is used in the manufacture of leather luggage, and that therefore there is a substantial similitude of use between the merchandise at bar and the case leather provided for in paragraph 1530 (b) (5), *supra*.

The protest is therefore overruled. Judgment will issue accordingly.

### DISSENTING OPINION

BROWN, Judge: I must respectfully dissent in this case because I do not think the merchandise involved has been advanced beyond the condition of hides covered by paragraph 1530 (a), as claimed by the plaintiff, by the processes applied to it.

It is significant, in this connection, that hides and skins of the India water buffalo imported to be used in the manufacture of rawhide articles are specially exempted from the provisions of paragraph 1530 (a). This express exemption implies that said paragraph covers generally hides like those before us fit to be used, and used, to make rawhide articles, like the merchandise before us. Otherwise why the exemption in that language?

The very term rawhide itself implies a *hide* from which such articles are made.