HARTMANN TRUNK CO. *v.* UNITED STATES (No. 4243)[1]

[1] C. A. D. 95.

United States Court of Customs and Patent Appeals, January 4, 1940

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, special attorney, of counsel), for the United States.

[Oral argument December 7, 1939, by Mr. Schwartz and Mr. Welsh]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, one judge dissenting, overruling the protest of appellant.

The question to be determined is whether certain merchandise, invoiced as "rawhide leather" is properly dutiable at the rate of 20 per centum ad valorem as bag or case leather under paragraph 1530 (b) (5) of the Tariff Act of 1930, as found by the Collector of Customs, or whether the goods should be held dutiable at the rate of 10 per centum ad valorem under paragraph 1530 (a) of the said act, or, in the alternative, whether they should have been admitted free of duty under paragraph 1765.

The pertinent parts of these paragraphs are as follows:

PAR. 1530. (a) Hides and skins of cattle of the bovine species (except hides and skins of the India water buffalo imported to be used in the manufacture of rawhide articles), raw or uncured, or dried, salted, or pickled, 10 per centum ad valorem.

(b) Leather (except leather provided for in subparagraph (d) of this paragraph), made from hides or skins of cattle of the bovine species:  * * *

(5)  * * *  bag, case  * * *  leather, in the rough, in the white, crust, or russet, partly finished, or finished, 20 per centum ad valorem;

[Free List] PAR. 1765. Skins of all kinds, raw, and hides not specially provided for.

The trial of the issue was held in the city of Milwaukee. Counsel for the Government conceded in the court below that the collector's classification of the merchandise directly as leather was erroneous, but contended that the merchandise is properly classifiable under paragraph 1530 (b) (5), *supra*, by virtue of the similitude clause of paragraph 1559 of the said act, which reads as follows:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned  * * *.

Government counsel alternatively contended that the merchandise is dutiable under paragraph 1558 of the said act, which, in part, provides for:

\* \* \* all articles manufactured, in whole or in part, not specially provided for \* \* \* 20 per centum ad valorem.

The trial court in its decision held that the rawhide in issue is used in the manufacture of rawhide luggage in the same manner that case leather is used in the manufacture of leather luggage, and that therefore there is a substantial similitude of use between the merchandise at bar and the case leather provided for in paragraph 1530 (b) (5), *supra*.

It is evident from the record that the imported goods came from cattle of the bovine species. The samples in evidence as Illustrative Exhibits A and B consist of large pieces of material, each in the general shape of one side of a cow hide. The material is thin and of uniform thickness.

The merchandise was produced in the following manner, as testified by a witness for appellant:

This product is produced from steer hides, which are received at the tannery in a green, salted condition. After they are received at the tannery, they are opened—they come in bundles; the bundle is opened—the hide is trimmed of any superfluous fleshy part, and is then soaked in water for a period of 18 to 20 hours, and thoroughly washed, after which it is run through a fleshing machine to remove any superfluous adipose tissue which may adhere to the flesh. After that it is unhaired, by means of a depilatory—in this instance lime, concentrated solution of lime. \* \* \* The purpose of the liming is to loosen the hair, after which it is taken out of this lime solution and put through a machine which scrapes the hair off of the grain surface of the hide. It is then thoroughly washed and bated. \* \* \* Bating is subjecting it to an action of a pancreatic enzyme, which is, in part, a substance which removes the lime from the hide. After the lime is removed from the hide by bating and washing, the hide is then leveled by means of a splitting machine to an even thickness. The thickness is predetermined because of the layout of the hide. For instance, the belly may be of a light weight—that is the term generally used, but we refer to thickness particularly—and if the belly is light, then the rest of the hide is leveled down to that same thickness. After that the hide is dried by tacking it on to boards, and it is finished. It is the finished product as you see it there.

While the same witness under cross-examination testified as follows:

X Q. Mr. Orthmann, what is a raw hide?—A. Referring to the exhibit?

X Q. I am just referring to a raw hide.—A. A raw hide is known as one that is taken off of the animal's back.

X.Q. Nothing is done to it?—A. Nothing is done.

X Q. What is an uncured hide?—A. An uncured hide is similar to that. I apply the same definition to it.

X Q. As you just applied to the raw hide?—A. Yes sir. A raw hide is also known as a sun-dried hide. I mean a hide that is hung in the sun to dry.

X Q. What is a dried hide?—A. A dried hide is one that is dried, usually in the sun, or in the atmosphere.

X Q. What are the processes that a dried hide goes through?—A. It is taken off the animal's back and hung up in the sun, usually rather often in a cupboard or under a canopy so as to effect an air current, so that the hide may dry thoroughly.

he also stated in his direct examination that in his opinion Illustrative Exhibits A and B "are raw" because, as he said, "* * * · they aren't changed from the original as they came off the animal's back, excepting for the fact that the hair has been removed and they have been thoroughly cleansed."

With respect to the seeming conflict shown in the above-quoted testimony, the court below in the majority opinion stated:

> Notwithstanding this latter view we are satisfied that Congress in providing for hides in various conditions in paragraph 1530 (a) of the Tariff Act of 1930 intended to cover only such as would fall within the common meaning of the terms used, i. e., raw or uncured, or dried, or salted, or pickled, and not within the technical meaning understood by the witness.

We agree with the foregoing reasoning of the trial court. The witness who testified as hereinbefore set out was a consulting chemist who specialized in the chemistry of leather. His statement that the merchandise was raw, in view of his answers on cross-examination, was, we think, made in the terms of science, and not in the language of commerce. However, tariff acts are not drawn in the terms of science, but in the language of commerce, which is presumptively that in common use. *American Felsol Co. et al.* v. *United States*, 25 C. C. P. A. (Customs) 367, T. D. 49454, and authorities cited therein. The question of commercial designation or meaning not being present in the instant case, it is our opinion that the common meaning must attach to the words raw, uncured, dried, salted and pickled as applied to hides in said paragraph 1530 (a).

The witness correctly described hides which are raw, uncured, or dried, in accordance with the common meaning of those words in his cross-examination. It is admitted by appellant that the merchandise is not salted or pickled. Surely the green hide which is received in a salted condition in the tannery and is trimmed of superfluous flesh, soaked in water for many hours, thoroughly washed, run through a fleshing machine, immersed in a lime solution, unhaired by a scraping machine, again thoroughly washed, subjected to the action of a pancreatic enzyme to remove the lime from the hide, leveled to an even thickness in a splitting machine, and dried is much more than a hide, raw, uncured or dried. It is something entirely different. It is *rawhide* and is bought and sold for use as such.

Appellant has cited, in support of its contention that the merchandise is raw hides, the cases of *In re Booth & Co. et al.*, T. D. 20884

(G. A. 4388), and *In re John L. Vandiver et al.*, T. D. 21657 (G. A. 4574). In the *Booth* case the Board of General Appraisers (now the United States Customs Court) held the goods to be "raw skins" within the meaning of that term as used in paragraph 6447 of the tariff act of July 24, 1897. The merchandise consisted of pickled or salted sheepskins which had undergone substantially the following processes, as described in the opinion:

> They are first limed, to remove the wool and hair, which is a mere depilatory process; this result may also be accomplished by sweating. After the wool is pulled, the skins are washed out and placed in a lime vat and allowed to remain for seven to twenty days; and on being taken out of the vat the lime is removed or washed out by a bran bath or other solution. They are then trimmed and put on a wooden beam, and the superfluous flesh and other impurities are removed by the use of knives, called "skivers." When splitting is done, they are split by machinery. The skins are then placed in a pickle, which consists of a solution of salt in water containing sulphuric acid, and on removal from the pickle they are tied up in bundles, and are thus imported, ready for tanning.

The court in that opinion stated:

> This pickling process is shown by the overwhelming weight of the evidence, even including that given by most of the Government witnesses, to be *designed purely for the purpose of preservation of the skins on their safe transportation to this country;* in other words, to prevent the articles from becoming putrescent. * * * In the condition in which they were imported, the great weight of the evidence shows that the skins can not be put to any practical use until they have been tanned or leathered, *except as raw material of the tanner.*

The merchandise in the instant case is not pickled and is put to practical uses in the condition in which it is imported, as will be hereinafter seen. Furthermore, it is not a "raw material" nor has it been processed "simply * * * for the purpose of preventing putrefaction and for convenience of transportation" as were the skins in the *Booth* case, *supra.* Therefore, we cannot hold that the decision in that case sustains the contention of the appellant that the merchandise herein is raw.

In the *Vandiver* case, *supra*, the hides of cattle and of East Indian buffalo, which had been limed to remove wool and hair and which were known to the trade as "limed hides," were held, under the tariff act of July 24, 1897, to be raw and uncured rather than leather not specially provided for or hides not specially provided for. There is no contention here that the rawhide is leather and since we have determined that the here imported merchandise is more than a hide we are unable to see how the *Vandiver* case can avail appellant as a supporting authority. Other cases cited upon this question have been examined and found inapplicable for the same reason.

The testimony on behalf of appellant herein is to the effect that the imported rawhide is produced, as before stated, for the purpose of being made into rawhide articles such as *rawhide-covered luggage*, drumheads and noiseless gears; that in covering wood cases for luggage it is used as case leather is used. As to the use of the involved rawhide in the plant of appellant, it was testified that:

As they receive the hides—they are usually received in rolls of this type—the rolls are opened and the hides are spread out flat, placed in a dry, fairly-cool room. After they are flattened out—they lay perfectly flat—they are removed from the pile and they are cut into the sizes that are required for covering luggage. These pieces are then dampened to make them flexible and workable at the edges and so on. After they are dampened properly they are covered with glue on the flesh side, and then applied to the case, which is usually a plywood box, and then the other part of the work is continued—that is, the sewing, the stitching, and putting on, etc.

We have herein held that the merchandise at bar does not respond in a tariff sense to any of the paragraphs of the Tariff Act of 1930 concerning hides. The imported articles are not enumerated for duty purposes anywhere in the said act. Therefore, it is proper to determine whether they are dutiable by similitude to an enumerated article chargeable with duty. *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67, T. D. 32351.

To bring an article within the scope of the similitude clause, it is sufficient if there exists a substantial similitude in any one of the particulars mentioned in the *Stouffer* case, *supra*, namely, material, quality, texture or use. *Thomass* v. *United States*, 1 Ct. Cust. Appls. 86, T. D. 31107; *John A. Paterson & Co.* v. *United States*, 166 Fed. 733; *United States* v. *Roesseler & Hasslacher Chemical Co.*, 137 Fed. 770; *Hahn* v. *United States*, 121 Fed. 152; *Arthur* v. *Fox*, 108 U. S. 125; *Weilbacher et al.* v. *Merritt*, 37 Fed. 85; *Sykes* v. *Magone*, 38 Fed. 494.

It appears to us from the record herein that the imported merchandise is more similar in use to the enumerated article, case leather, than to any other enumerated article in the tariff act.

In view of what has already been stated herein, it is not necessary to discuss any other points or cases relied on by appellant.

We are of opinion, as was the majority of the trial court, that the record abundantly discloses that the involved merchandise bears a similitude, in use to which it may be applied, to case leather used in the manufacture of leather luggage and that there is, therefore, a substantial similitude of use between the involved rawhide and the case leather provided for in paragraph 1530 (b) (5) of the Tariff Act of 1930.

The judgment appealed from is *affirmed*.