UNITED STATES *v.* COCHRAN & CO. (No. 552). UNITED STATES *v.* ROSENBLUM (No. 553).[1]

1. ASSESSMENT BY SIMILITUDE.

The assessment of an unenumerated article by similitude properly depends on its resemblance to some enumerated dutiable article and not upon the manner in which the enumerated article is itself named in the law; the unenumerated article is subject to the same duty that is levied on that enumerated article it most resembles in material, quality, texture, or use.—Patterson *v.* United States (166 Fed. Rep., 733) distinguished.

2. WOMEN'S IMITATION HORSEHAIR HATS.

Imitation horsehair hats are in material almost identical with, and in quality and texture they resemble, hats of cotton; the use of them, too, is similar. They were dutiable at the same rate with cotton wearing apparel under paragraph 314, tariff act of 1897, at 50 per cent ad valorem.

United States Court of Customs Appeals, March 20, 1912.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6487 (T. D. 27743).

[Reversed.]

*Wm. L. Wemple,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

*Brooks & Brooks* (*F. W. Brooks, jr.,* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of women's untrimmed hats, made by sewing into concentric form certain braids

composed of strands of imitation horsehair. The importation was made under the tariff act of 1897. The articles were unenumerated by the act, and the collector classified them by similitude with partly manufactured silk wearing apparel, under paragraph 390. Duty was accordingly assessed thereon at 60 per cent ad valorem.

The importers filed their protest to this assessment, and contended, among other claims, that the goods were dutiable at 50 per cent ad valorem by similitude with cotton wearing apparel, under paragraph 314; or at 35 per cent ad valorem by similitude with untrimmed hats of straw, under paragraph 409. This protest was heard upon testimony by the Board of General Appraisers, and was overruled. The importers thereupon appealed the case to the United States Circuit Court, Southern District of New York. Additional testimony was taken in that court; and upon consideration the court reversed the decision of the board, holding that the articles in question were not dutiable at 60 per cent ad valorem by similitude with silk wearing apparel, but instead were dutiable at 35 per cent ad valorem by similitude with hats of straw.

The Government now applies to this court for a reversal of that decision, no longer however contending for the collector's assessment by similitude with silk wearing apparel, but now contending for a classification by similitude with cotton wearing apparel. This latter claim was one of those contained in the importers' protest, and was strongly urged by the importers before the board.

In brief, the articles were hats of imitation horsehair, and under the act of 1897 were unenumerated; the collector assessed them at 60 per cent ad valorem by similitude with silk wearing apparel; the board affirmed that decision; the Circuit Court reversed the board's decision, holding the articles dutiable at 35 per cent ad valorem by similitude with straw hats; the Government appeals from the court's decision, claiming that the importation was dutiable at 50 per cent ad valorem by similitude with cotton wearing apparel.

The case therefore now presents the single issue, Were imitation horsehair hats dutiable under the act of 1897 by similitude with straw hats or by similitude with cotton wearing apparel?

The following is a copy of the pertinent part of the similitude section of the act of 1897, and also of the paragraphs containing the classifications in question:

SEC. 7. That each and every imported article, not enumerated in this act, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty * * *.

314. * * * Articles of wearing apparel of every description * * *, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise provided for in this act, fifty per centum ad valorem * * *.

409. * * * Hats, bonnets, and hoods, composed of straw * * *, whether wholly or partly manufactured, but not trimmed, thirty-five per centum ad valorem * * *. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The present competition, as above stated, is between alternative similitudes, and its decision depends upon the question whether the hats at bar, in material, quality, texture, and use, most resembled articles of wearing apparel composed of cotton on the one hand or hats of straw upon the other hand.

In respect to material, it is stated by a witness that imitation horsehair is 90 per cent cotton. This is not understood to mean that the article is to that extent composed of natural cotton fiber, but rather that a material derived from cotton and retaining its substance composed that percentage of the manufactured article. In that sense the statement is doubtless correct, and establishes a close relation, indeed almost an identity, between cotton and imitation horsehair in point of component material. It is probably true that straw also is composed of somewhat similar material, but it may be said that the actual derivation of imitation horsehair from cotton and its substantial identity with cotton in constituent elements are almost conclusive of its assimilation with cotton in respect to material.

In respect also to quality and texture, imitation horsehair hats incline toward articles of cotton. Each has a filament which is comparatively tough, and which is not flat or brittle. There is considerable testimony in the record tending to show a resemblance of the imported hats with hats of straw and that they are treated by the trade as almost identical in character; but after all it seems that the hats in question resemble cotton articles more nearly than articles of straw, not only in material, but also in quality and texture.

In respect to the use of the articles, as an element of similitude, the importers present an argument which they claim to be decisive of the issue. They call attention to the fact that the cotton paragraph above copied does not specifically name hats of cotton, but contains only a general classification of "articles of wearing apparel of every description composed of cotton," whereas in the straw paragraph hats are included by an *eo nomine* designation. The importers contend that "in applying the similitude clause, the article as imported should be compared, first, with articles provided for *eo nomine* in the tariff act;" and that "to give a concrete example, imitation horsehair hats are hats, imitation horsehair hats are wearing apparel, and, resort to the similitude clause being necessary, they should first be compared with such hats as are provided for *eo nomine* in the law, and the similarity required by the statute having been found not to exist they should then be compared with the wearing apparel that is denominatively provided for."

Acting upon this assumption, the importers assert that hats of straw appear *eo nomine* in the act of 1897, and that the only other hats appearing *eo nomine* therein are hats of fur. They therefore con-

tend that imitation horsehair hats must be classified with hats of straw under that act, since the foregoing rule limits the comparison in the first instance to hats only, and the points of similarity palpably incline toward hats of straw rather than toward hats of fur.

In answer to this, however, it should be observed that the similitude section requires a comparison as to material, quality, texture, and use between a given unenumerated article and any similar enumerated article chargeable with duty by the act; and it provides that the unenumerated article shall bear the same rate of duty that is imposed upon the enumerated article which it most resembles in these particulars. In the application of this provision an article is "enumerated" if it comes within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an eo nomine designation. Therefore, the paragraph which laid a duty upon articles of cotton wearing apparel of every description should be read the same as if all articles of cotton wearing apparel of every description were individually named by it. Such a reading makes the paragraph include cotton hats quite as effectively, for similitude purposes, as if they were designated eo nomine therein. In this view, under the act of 1897, hats of straw, under an eo nomine designation, and hats of cotton, as included within the general designation of "articles of wearing apparel of every description, composed of cotton," were both simply enumerated articles, with which the unenumerated hats of imitation horsehair must be compared in material, quality, texture, and use.

The general scope of the similitude clause in the customs acts is defined in a recent judgment of this court, delivered by Mr. Justice Field, as follows: "To place articles among those designated as enumerated, it is not necessary that they should be specifically mentioned. It is sufficient that they are designated in any way to distinguish them from other articles." Thus, the words "manufactures of which steel is a component part" and "manufactures of which glass is a component part," have been held a sufficient designation to render the goods enumerated articles under the statute and take them out of the similitude clause. Arthur v. Sussfeld (96 U. S., 128). Upon the same principle, "manufactures of hair" must be held a sufficient designation to place "such manufactures among the enumerated articles." Arthur v. Butterfield (125 U. S., 70, 76, 77). So the description, "manufactures composed wholly of cotton," or even "manufactures of cotton," has been held to be a sufficient enumeration. Stuart v. Maxwell (16 How., 150); Fisk v. Arthur (103 U. S., 431); see also Hartranft v. Meyer (135 U. S., 237).

In the customs act of 1883, Schedule A, entitled "Chemical products," besides defining the duties on more than a hundred kinds of such products, makes the duty on "all chemical compounds and salts, by whatever name known, and not specially enumerated or provided for in this act, twenty-five per centum ad valorem." The designation, "all chemical compounds and salts, by whatever name known," includes all chemical compounds and chemical salts, used then or thereafter in any science or art, as clearly as if the proper names of each and all of them had been given. Mason v. Robertson (139 U. S., 624).

See, also, United States v. Eckstein, decided by the Supreme Court December 4, 1911 (T. D. 32090); Thomass v. United States (1 Ct. Cust. Appls., 86; T. D. 31107); Robins v. United States (1 Ct. Cust. Appls., 252; T. D. 31278).

The rule of comparison advocated by appellees is not found in the language of the act, and is inconsistent with its purpose. By its application an unenumerated article might be assessed by similitude with an *eo nomine* article which it resembled in material, quality, texture, or use, even though the importation in those particulars much more nearly resembled some other article chargeable with duty under a class designation only. In this manner an artificial rule of construction would be introduced whereby the purpose of the law would be defeated, for the assessment of an unenumerated article by similitude properly depends upon its resemblance to some enumerated article chargeable with duty in the act, and not upon the manner in which such enumerated article is itself named in the act. The terms of the act are that the unenumerated article shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; whereas appellees' contention would provide that the unenumerated article shall pay the same rate of duty which is levied on the enumerated article most specifically mentioned in the act which it most resembles in the particulars before mentioned. It may be observed that, according to the act, if an unenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, the unenumerated article shall be classified with that enumerated article which bears the highest rate of duty, and not with that which is most specifically mentioned in the act.

Appellees cite the case of Paterson *v.* United States (166 Fed. Rep., 733) in support of their contention. In that case the court found that horsehair hat braids assimilated to straw hat braids rather than to silk braids, apparently upon the ground that the silk braids should be considered as if they were not hat braids, and therefore did not resemble horsehair hat braids in point of use. The court stated the matter as follows:

Does a horsehair hat braid bear greater similitude to a straw hat braid than it does to a silk braid? We have no hesitation in answering this question in favor of the importer. As between the two paragraphs in question, we have no doubt that the importer has chosen the more specific.

It may be observed again that as between different similitudes, the act provides that an unenumerated article shall be classified by similitude with such enumerated dutiable article as it most resembles in material, quality, texture, and use. In the Paterson case, straw hat braid was enumerated *eo nomine*. Silk hat braid was enumerated by force of its inclusion within the general class of "silk braids" provided for by the act. If it had not been enumerated at all it could not serve as an exemplar in similitude for the unenumerated article in question; but being enumerated under the general classification of "silk braids," it became proper and necessary to compare the unenumerated horsehair hat braid with it as well as with straw hat braid. The real question in the Paterson case, therefore, was this:

"Does the unenumerated horsehair hat braid most resemble straw hat braid, which is enumerated *eo nomine* in the act, or silk hat braid, which is enumerated therein under the class provision for "silk braids?" The answer to this question, of course, depends upon the actual resemblance of the unenumerated article to the two enumerated articles with which respectively it stood in comparison.

In the case at bar, the enumeration of "articles of wearing apparel of every description, composed of cotton," must certainly be held to include cotton hats, which of course were well-known articles of wearing apparel at the time of the enactment of the law.

In conclusion, it appears that under the act of 1897 imitation horsehair hats were comparable in similitude with hats of straw and with hats of cotton; in primary material the first are almost identical with hats of cotton; in quality and texture also they somewhat incline in resemblance to hats of cotton; and in use they equally resemble hats of cotton and hats of straw. It is therefore proper that they should bear the same rate of duty as hats of cotton, which under paragraph 314 is 50 per cent ad valorem.

In this view, the decision of the Circuit Court and also that of the board are *reversed*, and reliquidation ordered upon the basis of an assessment of 50 per cent ad valorem by similitude under paragraph 314 of the act of 1897.

DE VRIES, Judge, did not sit in this case.