BEFORE THE THIRD DIVISION, JULY 3, 1943

**No. 48506.**—Protest 733–K of Harry Winston, Inc. (New York).

KEEFE, Judge: This case involves the classification of two rough diamonds. The collector assessed duty thereon at 30 percent ad valorem under paragraph 214, Tariff Act of 1930. The plaintiff claims that the diamonds are free of duty under paragraph 1668, or dutiable at 10 percent ad valorem under paragraph 1558.

The paragraphs of the Tariff Act of 1930 in controversy provide as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured and' articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for,. whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

PAR. 1668. Diamonds and other precious stones, rough or uncut, and not. advanced in condition or value from their natural state by cleaving, splitting,. cutting, or other process, whether in their natural form or broken, * * *.

The plaintiff testified that he purchased the stones in London and after importation had showed them to Mr. Grasselly for examination "To determine whether they were cleaved by an expert or whether it was a natural cleave by nature,. after I had a dispute with the Collector of Customs."

Mr. Grasselly, an expert diamond cleaver, testified for the plaintiff that he had' examined the two stones in October, 1938, "To * * * see whether the cleavage had improved the value or whether there was any value added to the stones as they were when I saw them." The witness testified that originally the two stones formed a single unit and had been divided artificially by cleaving. As to the proper cleaving of the original diamond the witness testified:

Q. If you as an expert had those 2 stones as a single unit and were instructed' to cleave those stones would you have cleaved them in the way in which they were actually cleaved?—A. No, I would not. *I would have cleaved it right through the imperfection so as to divide the imperfection in both halves and not leave them all' entirely in one half. By that procedure one stone remained imperfect, where the other way you could have gotten 2 perfect stones possibly.*

Q. Do I understand then that by virtue of the method of cleavage which had' actually been employed the necessary result was that there would be 2 imperfect. stones?—A. Two imperfect stones.

Q. Two imperfect stones?—A. That is right.

Q. Would necessarily have resulted from the method of cleavage that had been: employed?—A. That is right.

Q. Whereas if you had cleaved it you would have obtained one perfect stone?— A. One perfect stone.

Q. Is a perfect stone more valuable than an imperfect stone?—A. Absolutely,. by far.

Q. In your opinion was the condition of this diamond improved by the cleavage that had been made?—A. No, not at all.

Q. Was its value enhanced by the cleavage that had been made?—A. Absolutely.

\* \* \* \* \* \* \*

Judge CLINE. Clearly, the witness didn't understand the question. We will' let the question be read.

\* \* \* \* \* \* \*

The WITNESS. No, it wasn't; it deteriorated.

\* \* \* \* \* \* \*

Q. Was the value of this stone increased by the cleavage?—A. No, it was not..

Q. Was the condition of this stone actually impaired by the cleavage that had' been made?—A. Yes, it was.

Q. Was its value impaired and reduced by the cleavage that had been made?— A. That is right, it was.

Q. If this stone had been presented to you as a single unit before any cleavage· had been effected would you say it was in a superior condition to its condition as: actually cleaved?—A. Positively.

Q. And would you say the same as to its value?—A. That is right. It would increase its value. (Record pp. 8–10).

The witness further testified that in his examination he did not find any imperfection at the point of cleavage; that if he were cleaving the diamond he would cut it through the imperfection, the purpose of cleaving being to eliminate the imperfection by cutting through it; and that there was an imperfection in one portion of the diamond after cleaving, referring to the two parts of the diamond as a whole.

Lazare Kaplan, who cleaved the famous Jonker diamond for the plaintiff testified for the Government that he could determine from a visual examination of a diamond whether it was naturally or intentionally cleaved; that he examined the diamond in question here at the request of the Government examiner and found that it had been intentionally cleaved, as it contained a V-shaped groove necessary for the insertion of a wedge; that if a diamond is cleaved at a point of imperfection the purpose of such cleaving is to advance its condition and its value from its original state and every imperfection eliminated improves a diamond; that when he examined the stones he did not notice anything wrong with the cleaving, but to determine whether it was properly cleaved in the right direction, he would have to study the stones thoroughly; and that in order to determine that point he would have to again view the two halves.

The plaintiff contends that rough or uncut diamonds are exempt from duty under paragraph 1668 even though cleaved, when such cleaving fails to advance the diamonds in value or condition from their original state; that if excluded from free entry because of an advance in condition or value, they are dutiable under paragraph 1528 as diamonds cut but not set, either directly or by virtue of the similitude clause, paragraph 1559; and that such diamonds are not dutiable under paragraph 214 as an earthy or mineral substance because they are specially provided for under paragraphs 1668 and 1528, and that paragraph 214 was primarily designed to include materials used for industrial purposes.

Plaintiff's contention for classification under paragraph 1528 will not here be considered as that claim was not made in the protest either directly or by way of amendment before docket call. The protest reads:

We claim that the assessment of this duty is erroneous for the following reasons:
1. The articles imported were two rough diamonds, both of which were cleaved. It is our contention that such cleavage was natural and that the stones are subject to no duty by virtue of paragraph 1668 of the Tariff Act of 1930.
2. The assessment of the duty under the provisions of paragraph 214 of the Tariff Act of 1930 as "earthy or mineral substances" is not justified. Paragraph 214 was not intended to cover diamonds. A contrary construction would be clearly unreasonable. The result would be to impose a duty of 30% upon diamonds which are only partly improved, whereas fully cut but unset diamonds are subject to a duty of only 10% under the provisions of paragraph 1528.
3. Even if the diamonds in question are not admissible duty free under the provisions of paragraph 1668, the only duty to which the entry should be subjected is one of 10% ad valorem under the provisions of paragraph 1558.

Paragraph 2 of the protest sets out the claim that the diamonds are not dutiable under paragraph 214 because it would be unreasonable to assess a 30 percent duty upon partially improved diamonds when fully cut diamonds are dutiable at only 10 percent ad valorem under paragraph 1528. Clearly the foregoing argument cannot be accepted in the light of a claim that the merchandise is dutiable under paragraph 1528. Paragraph 1558 provides for a duty of 10 percent ad valorem upon all raw or unmanufactured articles not enumerated or provided for. There is nothing here before us tending to establish that the diamonds in question are raw or unmanufactured articles, not enumerated or provided for. As a matter of fact a diamond is a mineral composed of crystallized carbon and directly included within the general terms of paragraph 214 as mineral substances.

Inasmuch as diamonds are in fact mineral substances the plaintiff's contention that the imported articles are dutiable by virtue of the similitude clause under paragraph 1528 is without merit because the similitude clause requires a comparison as to material, quality, texture and use, between a given unenumerated article and any similar enumerated article. In the application of this provision, an article is "enumerated" if it carries within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an *eo nomine* designation. See *United States* v. *Cochran*, etc., 3 Ct. Cust. Appls. 57, T. D. 32349.

We might also comment at this point upon plaintiff's contention that to classify the imported diamonds as mineral substances not specially provided for at 30 percent ad valorem was not justified because of the fact that cut diamonds are dutiable at only 10 percent ad valorem. It is the duty of the court to apply the statutes as they are written. Whatever the court may think of the justice or widsom of a statute, its judgment must be in accordance with the plain intendment of that statute (See *Shaw & Co.* v. *United States*, 12 Ct. Cust. Appls. 88, T. D. 40024) and if the plain and necessary construction of a tariff law should lead to the incongruous result of taxing a material for manufacture at a higher rate than the manufacture itself, the remedy is legislative and not judicial. See *Ringk & Co.* v. *United States*, 10 Ct. Cust. Appls. 107, T. D. 38372.

The Government contends that the two diamonds here are rough, uncut, and unset diamonds, advanced in condition or value from their natural state by cleaving, and neither dutiable directly nor by similitude under paragraph 1528, or as a raw or unenumerated article under paragraph 1558, because of the inclusion thereof in the general language of paragraph 214.

The only question remaining for consideration is whether or not the cleaving of the original diamond removed it from the provisions of the free-list paragraph 1668.

The diamonds had gone into consumption and were not available at the time of the trial. Apparently, according to plaintiff's expert witness, the original diamond was not cleaved through the point of imperfection. The Government witness agreed with the plaintiff's witness that a diamond is cleaved through the point of imperfection so that the imperfection will appear in both halves and may be eliminated later by cutting and further processing. Plaintiff's witness testified, however, that the cleaving in this diamond resulted in one perfect stone and one imperfect stone. He later apparently became confused when he testified that the method used by the cleaver produced two imperfect stones, and that if he had cleaved it he would have obtained one perfect stone and one imperfect stone. Both of these witnesses agreed however, that a perfect stone was more valuable than an imperfect one. Consequently, the cleaving of the original diamond, whether expertly performed or not, produced one perfect stone more valuable than before cleaving and the condition thereof certainly was advanced. Neither of the witnesses had viewed the stone for more than 3 years. According to the plaintiff and the Government witness, the inspection thereof by these experts was for the purpose of ascertaining whether or not the cleaving was the result of natural processes or had been intentionally performed.

From a careful consideration of the evidence as a whole, we are unable to determine whether the cleaving failed to advance their condition or value. Inasmuch as we are of the opinion that the evidence is insufficient to establish that the condition or value was not advanced by cleaving, we find it unnecessary to pass upon the construction of paragraph 1668 as to the question whether or not the language thereof embraces cleaved diamonds which are not advanced in value or condition from their natural state by cleaving.

For the reasons stated judgment will be entered in favor of the Government.