(C. D. 1857)

SEATTLE MARINE & FISHING SUPPLY CO.
ROBERT E. LANDWEER & CO., INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 15, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of these protests consists of vinyl plastic floats for fishing nets. They were assessed with duty at 45 per centum ad valorem, the rate applicable under paragraph 1511 of the Tariff Act of 1930 to—

* * * manufactures wholly or in chief value of * * * cork, not specially provided for * * *,

by virtue of the similitude clause in paragraph 1559 of the said act.

The similitude clause reads as follows:

That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned * * *.

It appears to be conceded that the only particular of similitude upon which rested the collector's decision to invoke the similitude clause was based upon a finding by that officer that there existed a similitude

in the use to which the imported plastic floats might be applied and the use of cork floats, classifiable under the provision for manufactures of cork.

Plaintiffs claim that the similitude clause is not applicable to the merchandise at bar for any or all of the following reasons: First, it is claimed that there is no substantial similitude of use between plastic and cork floats, and, second, it is claimed that no similitude of use can exist between an unenumerated article and a blanket provision for manufactures of a material, such as that for manufactures of cork.

In the event that either of these claims is sustained, plaintiffs claim that the proper classification of the merchandise is under the non-enumerated manufactured articles provision of the tariff act, as amended, paragraph 1558, with duty at 10 per centum ad valorem.

In the brief filed in behalf of plaintiffs, their counsel refers to an additional alternative claim, such to have been "presented by a recently filed amendment" to the effect that the merchandise at bar is actually "enumerated" in the tariff act, being properly classifiable under the provision for "all other fishing tackle and parts thereof" in paragraph 1535 of the act, as amended.

With reference to the claim under paragraph 1535, the following is noted in the brief filed on behalf of the defendant (p. 13):

This office, with the assistance of the Office of the Clerk of the Court, has examined the papers in this case and no sign of such amendment could be found.

Although thus placed on notice that, so far as the records of the office of the attorney for the defendant and of the court showed, no such amendment had been filed, plaintiffs' counsel did not pursue the matter further, and in a supplemental brief filed by plaintiffs' counsel in reply to the brief filed on behalf of the defendant no mention of such amendment is made. Another search of the records in the office of the clerk of this court failed to produce any indication that such an amendment had been filed. The claim will, therefore, not be considered here.

In support of the claim that no similitude of use can exist between an unenumerated article and a general provision for manufactures of a material—which, in effect, is a claim that merchandise covered by general designations by composition is not "enumerated" in the tariff act within the meaning of that term, as used in the similitude provision—plaintiffs' counsel cites the case of *Morganstern & Goldsmith* v. *United States*, 10 Treas. Dec. 314, T. D. 26733. That case related to umbrella handles made of a substance known as "gallalith" which had been classified, by similitude of use, to merchandise designated in the Tariff Act of 1897 as manufactures of horn. It was there held that "manufactures of horn" was not such an enumeration of umbrella handles made of horn as would warrant the application of the similitude clause.

Although the holding of that case was not specifically mentioned, in later cases, our appellate court, relying upon the authority of decisions of the Supreme Court of the United States, enunciated a contrary doctrine. For example, in *United States* v. *Cochran & Co.*, 3 Ct. Cust. Appls. 57, T. D. 32349, the court said:

* * * In the application of this [similitude] provision an article is "enumerated" if it comes within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an *eo nomine* designation. * * *

The court cited and quoted from *Mason* v. *Robertson*, 139 U. S. 624, in part, as follows:

The general scope of the similitude clause in the customs acts is defined in a recent judgment of this court, delivered by Mr. Justice Field, as follows: "To place articles among those designated as enumerated, it is not necessary that they should be specifically mentioned. It is sufficient that they are designated in any way to distinguish them from other articles." Thus, the words "manufactures of which steel is a component part" and "manufactures of which glass is a component part," have been held a sufficient designation to render the goods enumerated articles under the statute and take them out of the similitude clause. Arthur *v.* Sussfeld (96 U. S., 128). Upon the same principle, "manufactures of hair" must be held a sufficient designation to place "such manufactures among the enumerated articles." Arthur *v.* Butterfield (125 U. S., 70, 76, 77). So the description, "manufactures composed wholly of cotton," or even "manufactures of cotton," has been held to be a sufficient enumeration. Stuart *v.* Maxwell (16 How., 150); Fisk *v.* Arthur (103 U. S., 431); see also Hartranft *v.* Meyer (135 U. S., 237).

The designation "manufactures wholly or in chief value of * * * cork, not specially provided for," is, therefore, a sufficient enumeration of cork floats to support a classification under the similitude provision, if the other requirements of that provision be present.

Plaintiffs' claim of lack of similitude of use between plastic and cork floats is based upon the testimony of the president of the company which was the ultimate consignee of the merchandise. His testimony is to the effect that, in his experience, plastic floats, such as exhibits 2 and 3, in evidence as representative of part of the imported merchandise, are used by commercial fishermen operating boats, known as purse seiners, and particularly by those purse seiners who are mechanized, i. e., who use machinery to haul in their nets, instead of doing it by hand labor. It would appear from the witness' testimony that cork floats were generally used in purse seining until about 3 or 4 years ago. Before that time, purse seines, which are a type of net, were hauled in by hand and cork floats were satisfactory in such use. About the time that plastic floats, such as exhibits 2 and 3, appeared on the market, machinery came to be used in purse seiners, and, in hauling in the nets, the same are wound, by means of a power takeoff from the engines, around a large drum, putting a considerable strain on the floats, because of the curvature

of the drum and the weight of the net, particularly when wet and loaded with fish. There is testimony that, if cork floats were used with such machinery, the breakage from the strain would run from 15 to 20 per centum per season, whereas there is practically no loss when plastic floats are used.

It was admitted by the witness, however, that "lots of other seiners * * * pull in their nets by hand" and that such seiners use either cork floats or plastic floats, such as those involved. The former are being replaced by the latter, he said, due to the numerous advantages, such as durability and freedom from rot, the plastic floats have that the cork floats do not.

The witness further admitted that his testimony was confined only to his knowledge of commercial fishing by purse seiners in his part of the country, principally Puget Sound and the northwestern coast of the United States and Alaska, and that he was unable to say what fishermen, including purse seiners, in other parts of the country used, or what was used by tuna and sardine fishermen who used purse seines, inasmuch as he had no experience with tuna and sardine fishing.

It is the contention of the defendant that the sole use of a cork float is to support a fish net in the water; that the same may be said of the imported plastic floats; and that these facts establish the similitude of use called for by the statute. It is urged that the fact that plastic floats resist pressure when used in mechanized operations, whereas cork floats have a high incidence of breakage under such conditions, is not controlling here, inasmuch as comparative durability involves a question of quality, which, it is claimed, is not material to the issue.

Plaintiffs' reply is that the float plays a part in the entire operation of spreading the net, catching the fish therein, hauling in the net, and recovering the fish and that no similitude of use can exist, unless it can perform its functions during all of these operations.

We are, however, of the opinion that, on the record made, plaintiffs have failed to establish a lack of substantial similitude of use between cork and plastic floats. Plaintiffs' position, as stated in its supplemental brief, is based upon the contention that the purse seine fishing industry is a mechanized one and that cork floats cannot be used in such a mechanized industry because of breakage. In our view, the most that can be said of the record is that it established that, in certain cases and for certain reasons, some purse seiners now use plastic floats rather than cork floats. It appears, however, that other purse seiners still use either type, and the record does not disprove that some purse seiners may use cork floats exclusively.

Plaintiffs cite as analogous on the facts the case of *Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960. That case in-

volved an importation of cellophane in strips, which had been held to be classifiable by similitude of use to manufactures of gelatin, specifically gelatin in sheets. Inasmuch as cellophane in strips was found to be used chiefly, if not wholly, in mechanical operations in which gelatin could not be used because of brittleness, lack of tensile strength, and a tendency to absorb moisture and become soft and sticky, it was held by the appellate court that there was no substantial similitude of use between the imported cellophane strips and manufactures of gelatin.

In the present case, there has been no similar showing. While it has been established that plastic floats are particularly adapted for use in mechanized purse seining, it has not been shown that they are chiefly used for such purpose and that purse seining is a wholly mechanized industry. Moreover, in the *Ringk* case, it was shown that it was impossible to use gelatin in mechanized operations, whereas, in this case, it has not been shown that it is impossible to use cork floats in mechanized or hand purse seining, but merely that plastic floats are superior from the standpoint of durability to cork floats.

For the foregoing reasons, the protest claim in each case for duty at the rate of 10 per centum ad valorem under paragraph 1558, as amended, is overruled.

Judgment will issue accordingly.