UNITED STATES v. WECOLITE CO. (No. 4914) [1]

United States Court of Customs and Patent Appeals, January 22, 1958

[1] C. A. D. 672.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for appellee.

[Oral argument December 5, 1957, by Mr. FitzGibbon and Mr. Mandell]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, entered pursuant to its decision (C. D. 1858), sustaining a protest against the collector's classification and duty assessment of merchandise consisting of plastic mustard dispensers.

The merchandise was held dutiable by the collector under paragraph 218 (f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, by virtue of the similitude provisions of paragraph 1559 of said Act, as "blown" glass articles, at the rate of 50 per centum ad valorem. The importer (appellee here) protested, claiming the merchandise to be dutiable under paragraph 218 (g) of said Act, as modified by T. D. 51802 and T. D. 51898, *supra*, by virtue of the similitude provisions of said paragraph 1559, as "pressed" glass table or kitchen articles, not polished. Alternatively, appellee urged the applicability of paragraph 1558 of said act, as "articles manufactured, in whole or in part, not specially provided for," at the rate of 20 per centum ad valorem.

The Customs Court found the merchandise to be properly dutiable under paragraph 1558 and from this holding the Government (appellant here) appeals.

Paragraph 218 (f), as modified, reads as follows, insofar as pertinent:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground * * * painted, * * * whether filled or unfilled, or whether their contents be dutiable or free * * *:

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other_____ 50¢ on each article or utensil, but not less than 30% nor more than 50% ad val.

Paragraph 218 (g), as modified, reads as follows, insofar as pertinent:

Table and kitchen articles and utensils, composed wholly or in chief value of glass, when pressed and unpolished, * * *_____ 25% ad val.

Paragraph 1558 reads as follows, insofar as pertinent:

That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated * * * a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Paragraph 1559, in effect at the time of entry of the instant merchandise, reads as follows, insofar as pertinent:

·That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

From the official sample of the imported merchandise, which sample was received in evidence as plaintiff's Exhibit 1, it may be seen that each of the instant mustard dispensers consists of a transparent, plastic, cup-like bottom section (which serves as the container for the mustard), a plastic, dome-shaped top which screws onto the bottom section, and a piston-type element with a flange portion which fits snugly against the inside circumferential area of the bottom section and a hollow, tubular portion which extends through a hole in the top. A lever is positioned in the top, which lever is connected to a spring element to which a plastic ring, fitting loosely around the tubular portion of the piston-type element, is responsive. In operation, after the mustard is placed in the bottom element, the piston element is placed over the mustard and the unit is closed with the top, the dispenser is inverted and the lever is pressed. The lever acts on the spring, forcing the plastic ring against the tubular portion of the piston-type element, which, in turn is forced downward into the bottle. The pressure created by the downwardly moving piston-type element forces mustard up through the hollow of said element and out of the dispenser.

Three additional physical exhibits were also submitted into evidence. Plaintiff's Exhibit 2, which apparently was the type of dispenser used as a criterion to support classification of the instant merchandise by similitude, consists of two pieces: a container similar to the bottom element of the instant dispensers except that it is constructed of glass, and a metal top which screws onto the bottom. The top contains a lever which actuates a spring-controlled piston whose head merely physically traps the material to be dispensed and forces it out of a hole located in the top.

Plaintiff's Exhibit 3 is a common glass mustard jar with a plastic top. This jar contains no moving elements. Plaintiff's Exhibit 4 is identical to Exhibit 1 but is manufactured domestically.

Two witnesses testified, one on behalf of appellant and one on behalf of appellee. Much of their testimony was directed to the question as

to whether Exhibit 2 was made of "blown" glass or "pressed glass." The Customs Court, deciding the case on another point, deemed it unnecessary to consider such testimony. Relying upon *Mary G. Ricks v. United States,* 33 C. C. P. A. (Customs) 1, 6, 7, C. A. D. 308 and *Pittsburgh Plate Glass Co. v. United States,* 2 Ct. Cust. Appls. 389, T. D. 32162, the court stated its position as follows:

> The testimony in this case, adduced on behalf of the defendant, is to the effect that plaintiff's exhibit 2 represents the only type of mustard dispensers composed of metal and glass * * *. The Government's witness had not seen any plastic article, such as that represented by plaintiff's exhibit 1, other than the article represented by the latter exhibit, and he had not seen any articles like plaintiff's exhibit 2 composed of plastic in part with a plastic base * * *.
>
> The record in the case establishes that there is no article in use which is operated in the same manner as the imported article, other than a domestic article, which is similar in construction and composition and which operates in the same manner as the dispensers here imported. Plaintiff's exhibit 2, which apparently, in this case, was the type of dispenser used as a criterion to support classification of the imported merchandise, by similitude, is quite substantial in construction and embodies a "spring" mechanism, the glass base therein acting merely as a container. While the container portion of plaintiff's exhibit 1 might be said to be similar in use to the base and glass portion of plaintiff's exhibit 2, inasmuch as that part of the article serves as a container for the contents, the mode of operation of exhibit 1, considered as an entirety, namely, by a plunger and compressed-air method, is substantially different from that of plaintiff's exhibit 2. This essential difference, in our opinion, precludes a finding that the imported merchandise should be held dutiable, by similitude to a mustard dispenser, represented to be blown or partly blown glass (plaintiff's exhibit 2), which is operated in an altogether different manner.
>
> The mere fact that the imported articles hold, and are used to dispense, mustard, and that, in their end use, they are thus employed for the same purpose as is indicated for certain blown glass dispensers does not constitute, in itself, in our opinion, a "substantial resemblance" to support the application of the similitude clause to the imported merchandise, by virtue of similitude of "use," as is here contended by the defendant.

Appellant contends that the cases cited by the Customs Court do not require that the "mechanism" of the two articles be similar; that all that is required for classification by similitude in use is a similar end result or purpose (viz—in this case, the mechanical dispensing of mustard).

We are constrained to disagree with appellant and to affirm the decision below.

Inasmuch as neither party has urged similitude in material, quality or texture, we will confine our discussion to the sole question before us: is there similitude in use between the instant mustard dispensers and mustard dispensers of "blown" glass? [2]

---

[2] While "mustard dispensers" are not *eo nomine* enumerated in paragraph 218 (f), as modified, it is well settled that, in the application of the similitude provisions, an article is "enumerated" if it comes within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an *eo nomine* designation. *United States v. Cochran & Co.,* 3 Ct. Cust. Appls. 57, T. D. 32349.

In the *Pittsburgh Plate Glass Co.* case, *supra*, one of the questions presented was whether mats of unwoven hair were dutiable by similitude in use to unwoven felts composed wholly or in part of wool. Though the case arose under the tariff act of 1909, the similitude clause of that act (paragraph 481) is substantially equivalent to the corresponding provision in paragraph 1559 of the 1930 Act. Both of the articles in question were admittedly used in machines for polishing plate-glass. In the course of its opinion, the court stated, at p. 392:

* * * It appears from the uncontradicted testimony in the record that the method of using each of the articles is somewhat different, incident to the difference in the machinery employed, *but they are used substantially in the same manner.* In the one case motion of a certain direction is had, while in the other motion of a different direction is given. *The result in each case is identical,* so that it seems to us that the conclusion is inevitable that there is a similitude, though not an identity *in the mode of use.* (Emphasis added.)

The *Pittsburgh Plate Glass Co.* case was cited with approval in the *Ricks* case, *supra*.

Appellant attempts to capitalize on the second italicized portion of the foregoing excerpt to the effect that:

It is to be noted that even though the *mechanics* of the operation were somewhat different, the end result and purpose was the same with either article, and the difference in method used to achieve the result was no bar to a finding of similitude.

Appellant has obviously misconstrued the import of the holding in the *Pittsburgh Plate Glass Co.* case. The court in that case did not hold that a mere substantial similarity in *end result* was sufficient to establish similitude in use. Note the phrases "they are used substantially in the same manner" and "there is a similitude, though not an identity in the mode of use." This is also evident from the court's reference, immediately following the aforequoted portion of its opinion, to several cases on the question of similitude. The court stated:

It is pertinent to quote upon the subject of the application of the similitude clause United States *v.* Roessler (137 Fed. Rep., 770).

The counsel for the appellant have taken pains to point out numerous instances wherein the two articles differ, but it must be borne in mind that the statute does not require identity; if that were necessary the statute would have no *raison d'etre.* It is enough if there be a substantial similitude in any one of the particulars mentioned—material, quality, texture, or use. Arthur *v.* Fox (108 U. S., 125).

In Pickhardt *v.* Merritt (132 U. S., 252) the Supreme Court of the United States said, in approval of construction by the lower court, as follows:

* * * The mere application to the dyeing of fabrics would not create the similitude, but that if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in *substantially the same way,* so as to *take the place* of aniline dyes in use, there would be a similitude in use.

So in Murphy *v.* Arnson (96 U. S., 131), in speaking of the application of the similitude clause, the Supreme Court of the United States laid down the doctrine

that the similitude *"plainly refers to its employment,* or its effect in producing results."

It is clear from the reliance of the court on the foregoing cases that "mode of operation" was a critical factor in determining similitude in use. Aside from other requirements which may exist, only if they are "used substantially in the same manner" is there a similitude in use.

That this is the law is hardly to be disputed. Thus, in *United States* v. *Godillot & Co.,* 3 Ct. Cust. Appls. 128, T. D. 32382, it was stated that:

\* \* \* To constitute similitude of use the results of the use must be substantially the same *and achieved substantially in the same way.* Pickhardt *v.* Merritt (132 U. S., 252, 258). It seems to us that there is no more reason for saying that a night light is similar to the modern taper or to the taper candle than there is for saying that a modern candle is similar to a match or that the candle itself is similar to a kerosene lamp. Tapers, matches, candles, taper candles, kerosene lamps, and electric bulbs all furnish light, some for brief, some for longer periods; but that fact, standing by itself, can hardly be said to rank them as articles of similar use. (Emphasis added.)

If the Customs Court's findings of fact are correct (as to the substantial difference between the mode of operation of the instant merchandise and glass mustard dispensers), it follows from the foregoing discussion of the law on the instant question that the merchandise is not dutiable by similitude to "blown" glass articles.

We have carefully examined the record and find that the lower court's findings of fact, as set forth in the portion of its opinion quoted, *supra,* are supported by substantial evidence.

In the view we have taken of this case, it is unnecessary to consider the question as to whether Exhibit 2 is a "blown" or a "pressed" glass article.

And since appellee, through counsel at oral argument, has expressly abandoned its alternative claim under paragraph 218 (g), the decision of the Customs Court must be *affirmed.*

JACKSON, J., Retired, recalled to participate.