PETRU AMERICAN·IMPORTING Co. *v*. UNITED STATES (No. 83).[1]

SUBSTITUTE FOR COFFEE.

> An article represented to be and sold as a substance not alone for coloring coffee, but as a substitute for a portion of each drawing of coffee, adding, it being claimed, to the quality, purity, and wholesomeness of the beverage as served, was dutiable under paragraph 283, tariff act of 1897, as a substitute for coffee.

United States Court of Custom Appeals, November 30, 1910.

APPEAL from a decision of the Board of United States General Appraisers (T. D. 30547).

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* on the brief) for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*W. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The protestant imported merchandise which was assessed at 2½ cents per pound under paragraph 283 of the tariff act of 1897 as an article used as a substitute for coffee. He protested upon the ground that the articles are not enumerated in the tariff act and should be held dutiable under section 6 of the act of 1897 as a nonenumerated manufactured article. The Board of General Appraisers overruled the protest and sustained the assessment. The case is brought here for review.

Merchandise very similar in its composition to some of that involved in this case was considered by the court of appeals in Hazard *v*. United States (175 Fed. Rep., 967). The court said of the article in controversy in that case:

> The board finds that the article is not coffee and that paragraph 283 is intended to cover articles which are not coffee, but are used as substitutes for it. That this article, which the board finds is not coffee, is used as coffee or as a substitute for coffee seems to be undisputed. The paragraph in question recognizes the fact that some articles which are not coffee are used as substitutes therefor. If the article in question be not such a substitute, it certainly is similar in its use to articles which are. Indeed, it seems to have no other use.

---

[1] Reported in T. D. 31113 (19 Treas. Dec., 1244).

The importations in question have in each instance substantially the same directions printed on the packages, the one reading:

Use 1 part of this fig essence to 2 parts of coffee. Pour boiling water over the mixture, let it draw 8 minutes and strain.

These directions are given on two of the compounds. The two other compounds are labeled "Coffee substitute." One contains on the label the statement: "Compound of chicory and sugar rape." The other, "Made only of figs."

The importer's witness testified that all of the articles represented by the various exhibits were used in the same way. It is true, he testified, that they were used for coloring coffee to make it a little darker than the natural color of the coffee. But every sale made by this importer of two of the brands at least was accompanied by the statement printed on the package:

This fig essence renders coffee to be the best, purest, and healthiest drink, so that it surpasses in its quality all other kinds of coffee essence, because it makes coffee better, gives the right color, and wholesome taste. It is recommended by the most excellent doctors and specialists.

This statement directly contradicts the testimony that the only purpose of the use of this preparation is to color the decoction.

The case is directly analogous to Hazard *v.* United States, except that in the present case this is not a complete substitute for coffee, but is a substitute for a portion of each drawing of coffee. We think it is in all substantial respects similar to the articles under consideration in the case cited, and the ruling of the board is affirmed.