(C. D. 1290)

DORWARD & SONS CO. PACIFIC VEGETABLE OIL CORP. } v. UNITED STATES

United States Customs Court, First Division

(Decided December 28, 1950)

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti* and *Frank L. Lawrence* of counsel) for the plaintiffs.
*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

MOLLISON, Judge: The merchandise the subject of these protests consists of rapeseed oil which was admitted free of duty under the provision for denatured rapeseed oil in paragraph 1732 of the Tariff Act of 1930 but upon which a tax or duty at the rate of 4½ cents per

pound was assessed under the provision in section 2491 (b) of the Internal Revenue Code (26 U. S. C. § 2491 (b)) for rapeseed oil. In each of the protests the oil is claimed to be entitled to the exemption from duty granted under section 2491 (f) of the Internal Revenue Code, the pertinent portion of which reads as follows:

§ 2491. Rate of tax.

\* \* \* \* \* \* \*

(f) The tax imposed under subsection (b) shall not apply to rapeseed oil imported to be used in the manufacture of rubber substitutes \* \* \*, and the Commissioner of Customs shall, with the approval of the Secretary, prescribe methods and regulations to carry out this subsection.

When the protests were called for trial counsel for the plaintiffs and defendant stipulated in open court as follows:

\* \* \* that as hereinafter described the oil in question was converted into the form of blown oil and in that condition was used in lieu of rubber in the manufacture of caulking compound, that a caulking compound is not a substitute for rubber, and that the other ingredients of the caulking compound were not rubber, that the aforesaid conversion into blown oil was accomplished as follows: The imported oil was subjected to a blowing process under conditions of temperature and air input which are controlled automatically and are accompanied by repeated samplings by technicians, careful processing being required to prevent over-polymerization, undue viscosity, and acidity, and undesirable qualities other than those. This treatment of rapeseed oil alters its character in many respects of commercial and technical significance: Its composition is changed by the addition of oxygen; its viscosity is increased 100 times or more; its specific gravity from .93 to 1.1; its acidity roughly from 3 to 6; its titer or solidification point from minus 10 to plus 10 degrees C.; its saponification value from 170 to 200; and its refractive index from 1.465 to 1.48; and its iodine value decreases from 95 to 70; and it becomes waxlike instead of fluid, darker in color, and inedible; that two bottles herewith were labeled respectively "Refined Rapeseed Oil," and "Blown Rapeseed Oil," may be admitted in evidence as illustrative exhibits A and B as representing respectively the rapeseed oil as imported, and the blown rapeseed oil as used in the manufacture of caulking compound as above stipulated; that the customs regulations pertaining to rapeseed oil used in the manufacture of rubber substitutes under Section 2491 (f) of the Internal Revenue Code were complied with by plaintiffs. [R. pp. 2–3.]

The bottles referred to in the stipulation, marked A and B, were received in evidence and the protests were submitted for decision. The foregoing stipulation and exhibits constitute the entire record before us.

It is contended by the plaintiffs that the facts stipulated establish that the process described by which the imported rapeseed oil was converted into the form of blown rapeseed oil was a process of manufacture, and that the blown oil was a rubber substitute within the meaning of the term as used in section 2491 (f), *supra*.

While the defendant does not concede that the conversion process amounted to a manufacture of the imported oil, its position, in fine,

is best described in the following language in the brief filed in its behalf:

\* \* \* Assuming without conceding, that blown rapeseed oil is a manu-facture of rapeseed oil, we nevertheless submit that it is immaterial whether it is a manufacture or not, because blown rapeseed oil is not a recognized rubber substitute.

In this situation we will proceed first to a consideration of the question of whether blown rapeseed oil is a rubber substitute within the meaning of the language used in section 2491 (f), *supra.*

Plaintiffs have cited in the brief filed in their behalf the definitions of the nouns "lieu" and "substitute" as found in Webster's International Dictionary as follows:

**lieu,** *n.* Place; room; stead;—used chiefly in the phrase *in lieu of,* that is, instead of \* \* \*.

**substitute,** *n.* A person or thing put in place of another; \* \* \*

and argue therefrom that the stipulation that the blown oil "was used in lieu of rubber" establishes that it was used as a rubber sub-stitute. Plaintiffs have cited the cases of *G. W. Sheldon & Co.* v. *United States,* 49 Treas. Dec. 1017, T. D. 41643, and the case of *Tai Lung Co.* v. *United States,* 18 C. C. P. A. 35, T. D. 44004, where the question was whether slippers with straw uppers were—

\* \* \* footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing \* \* \*,

and in each case it was held that the material, straw, used in the imported slippers was a substitute for either the materials "fiber" or "ramie" named in the provision. The appellate court found in the latter case that—

\* \* \* The characteristics and uses of vegetable fibers are, in many instances, quite similar to those of straw. \* \* \*

Plaintiffs have also cited, in support of their contention, the follow-ing cases in which the issue was whether a tariff provision for "sub-stitutes for coffee" covered various proprietary and other prepara-tions: *United States* v. *Rosenstein et al.,* 60 Fed. 74; *E. C. Hazard & Co.* v. *United States,* 175 Fed. 967; *United States* v. *Solfronk,* 19 Treas. Dec. 426, T. D. 30550; and *Petru American Importing Co.* v. *United States,* 1 Ct. Cust. Appls. 106, T. D. 31113. Also cited is the case of *Weilbacher et al.* v. *Merritt, Collector of Customs,* 37 Fed. 85, involving the meaning of a tariff provision for "gum substitutes."

On its part the defendant has cited and quoted in the brief filed in its behalf various technical works, including "Chemical Technology and Analysis of Oils Fats and Waxes," Fifth Edition, by Lewkowitsch; "Commercial Organic Analysis on Resins, Rubber, Gutta-Percha and Essential Oils," Fourth Edition, by Allen; and "Industrial Chemistry

(Organic)," Fifth Edition, by Martin, to the effect that rubber substitutes are made of oils by a process of vulcanization, to which process the imported oil was not subjected.

We are, frankly, not persuaded by the arguments or authorities advanced by either side. In our view, the record is insufficient upon which a finding as to whether blown rapeseed oil is or is not a rubber substitute can be made. Our view of the situation is very well described in the following paragraph taken from the opinion of a majority of the Court of Customs and Patent Appeals in the case of *Bulova Watch Co.* v. *United States*, 21 C. C. P. A. 156, T. D. 46494, at page 162:

> The word "substitute" has a very general meaning and its particular meaning in a given relation can not be determined alone from its general meaning. To illustrate, in one sense of the word, mineral water is a substitute for beer in that both beverages are used to quench thirst, but it would hardly be said that if, in addition to a tariff duty on beer, there should be a provision in the tariff act that the word "beer" should include "substitutes for beer," mineral water would be dutiable at the same rate as beer.

So, in the case at bar, the mere fact, standing alone, as stipulated, that blown rapeseed oil is used in lieu of rubber in the manufacture of caulking compound does not establish that it is a rubber substitute. The record is silent as to those characteristics of blown rapeseed oil which might make it adaptable or suitable for use as a substitute for rubber.

Instead of facts with respect to the characteristics of blown rapeseed oil itself, the record states that it is used in lieu of rubber in a particular application. The use of a given substance in lieu of another in a particular application does not necessarily connote that one is a substitute for the other, an example of this being that given by our appellate court in the cited case, i. e., the use of mineral water in lieu of beer in order to quench thirst. There may be elements of choice, or of the desire to take advantage of some characteristic possessed by one substance not possessed by another. Thus, one may use rubber heels in place of leather heels without there being any connotation that one is a substitute for the other, or similarly one may use a fountain pen rather than a dip pen.

We do not mean to be understood as holding that in its application a substitute is necessarily inferior to that which it replaces—on the contrary, we think that it may be inferior, on a parity, or superior in this sense, but always there must be present in the substitute at least some of the primary or essential characteristics of the replaced substance or thing. The exemption provision in section 2491 (f), *supra*, is for "rapeseed oil imported to be used in the manufacture of rubber substitutes," and obviously a substitute for rubber must have some characteristics of rubber; otherwise, it would not be a substitute for rubber but a wholly independent substance or thing having no

substantial relationship to rubber. It is on these most material points; that the record at bar is deficient.

We are of the opinion that on the record presented here and for the purposes of this decision, we need not go so far as to hold that there is a class of substances commonly and/or commercially known as rubber-substitutes—those denominated "recognized" rubber substitutes by the defendant in its brief—which would include or exclude the blown rapeseed oil here involved. We do hold that the record before us is. insufficient for us to find that blown rapeseed oil is in fact a rubber-substitute.

The claim made in each of the protests for exemption under section 2491 (f) of the Internal Revenue Code is therefore overruled, and. judgment will issue accordingly.

CONCURRING OPINION

COLE, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28. U. S. C., 1946 ed., Supp. III, § 253). My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case somewhat similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am participating in this decision and the judgment accompanying the same.