(C. D. 2035)

Torch Rubber Co., Inc.
Rohner Gehrig & Co., Inc. } *v.* United States

United States Customs Court, First Division

(Decided October 28, 1958)

*Barnes, Richardson & Colbarn* (*Edward N. Glad* and *E. Thomas Honey* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: Paragraph 1530 (e) of the Tariff Act of 1930, as modified by the Presidential proclamations reported in T. D. 53865 and T. D. 53877, imposes duties on imported footwear—

* * * the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, rayon or other synthetic textile, silk, *or substitutes for any of the foregoing* * * * [Italics added.]

—depending upon the material of which the soles are wholly or in chief value composed. If the soles are composed wholly or in chief value of india rubber or substitutes for rubber, the duty is 20 per centum ad valorem, and if (with certain exceptions not material here) the soles are composed wholly or in chief value of other materials, the duty is 25 per centum ad valorem.

The plaintiffs herein imported certain slippers with uppers composed of cotton twill and polyureathane foam, a kind of plastic material, and soles composed chiefly of polyureathane foam. The cotton twill was used as a backing material for the plastic foam material in the uppers, and there seems to be no dispute but that the plastic foam material was the material of which the uppers were composed in chief value, and that the cotton twill was not in chief value.

The collector took duty on the slippers at the rate of 25 per centum ad valorem on the ground that the slippers were footwear "the uppers of which are composed * * * in chief value of * * * [a substitute

for] synthetic textile * * * with soles wholly or in chief value of * * * materials [other than india rubber or substitutes for rubber] (except leather * * *)."

The protest claim is for duty at the rate of 10 per centum ad valorem under paragraph 1530 (e) of the said act, as modified by the Presidential proclamation reported in T. D. 51802, by similitude of use, under paragraph 1559 (a) of the said act, as amended by the Customs Simplification Act of 1954 (68 Stat. 1137; T. D. 53599), to the "slippers for housewear" therein provided for, if "made wholly or in chief value of leather, not specially provided for."

A sample of the imported articles is before us as plaintiffs' illustrative exhibit 1. It consists of what has been identified as a "scuff," a common type of slipper which has neither quarter nor counter or back, and which is held on the foot by the upper, the latter consisting of a vamp or front part of an upper. Inasmuch as it is necessary to adopt a shuffling gait in order to keep the articles on the feet, the name "scuff" probably derives from the noise thus produced.

In disproof of the collector's classification, it is the plaintiffs' contention that the plastic foam material, of which the uppers in the slippers at bar are in chief value composed, cannot be considered a substitute for any synthetic textile, and that, consequently, the slippers at bar do not come within the description of those provided for in the tariff paragraph under which the collector took duty.

Plaintiffs' contention, in this regard, is based upon argument to the effect that the term "substitutes" as used in the tariff act refers to materials having at least some of the primary or essential characteristics of the substances or things which they replace. This argument is based upon language used by this court in the case of *Dorward & Sons Co. et al.* v. *United States*, 26 Cust. Ct. 18, C. D. 1290, affirmed in *Same* v. *Same*, 40 C. C. P. A. (Customs) 159, C. A. D. 512.

In support of that argument, plaintiffs point out that by definition (Funk & Wagnalls New Standard Dictionary and Webster's New International Dictionary) the word "textile" refers to woven fabric or material, or material capable of weaving. It requires only the merest inspection of the sample received in evidence as plaintiffs' illustrative exhibit 1 to show that the plastic foam material used in the uppers is neither a woven fabric or material nor a material capable of weaving.

In the *Dorward* case, *supra*, we said:

* * * always there must be present in the substitute at least some of the primary or essential characteristics of the replaced substance or thing.

In that case, the merchandise imported was rapeseed oil, and it was stipulated that, after importation, the oil was converted into blown rapeseed oil and, in that form, "was used in lieu of rubber" in

the manufacture of a caulking compound. The merchandise had been assessed with duty under a provision which exempted from such duties "rapeseed oil imported to be used in the manufacture of rubber substitutes," and plaintiffs therein contended that the stipulation that the imported rapeseed oil was, after conversion into blown rapeseed oil, "used in lieu of rubber" established that it was imported to be used in the manufacture of a rubber substitute.

In holding that the stipulation was insufficient to establish that fact, we cited the case of *Bulova Watch Co.* v. *United States*, 21 C. C. P. A. (Customs) 156, T. D. 46494, in which it was held that the mere fact that one material may be used in place of another material does not make the first material a substitute for the other, at least in a tariff sense.

The same *Bulova* case decision contains probably the best example which may be given as to the distinction between substitutes for a material and materials which may be used in lieu of another material. In that case, the imported merchandise consisted of watch movements, each having seven jewels and eight metal bushings used as bearings in the watches. The tariff act imposed a duty, in addition to that imposed upon the movements, for each jewel in excess of seven jewels and contained a provision that—

For the purposes of this paragraph * * * the term "jewel" includes substitutes for jewels.

The collector assessed duty on the basis that the bushings were "substitutes for jewels," and the importer filed protest in this court. The evidence showed—

(1) That watch jewels are removable frictional bearings;

(2) That in cheap watch movements metal bushings serve as bearings instead of jewels;

(3) That those functions of a jewel which are similar to those of a bushing are that each is removable, each has provision for lubrication and for taking up the "end shake," and each operates to make the watch movement more readily adjustable; and

(4) That the sole difference between the two classes of articles is that the jewels are more durable.

A further fact of which the appellate court took judicial notice was that the only reason that a jewel is ever used in a watch movement in preference to a pivot bearing of metal is because of the hardness of the jewel and the smaller amount of friction encountered in its use.

It, therefore, appeared that the selection of either bearings or jewels for use as bearings in a watch was purely a matter of choice, depending upon the qualities considered to be paramount, just as one might select beer for a beverage, rather than coffee, or *vice versa*. Either jewels or bushings would act as removable frictional bearings, just as either beer or coffee will quench thirst. If one wished a hard material

for such a bearing, one chose a jewel; if considerations other than hardness were more desirable, one chose a bushing. In such cases, one would not be considered as a substitute for the other except in a very general sense. The use of the term "substitutes" in the tariff, however, obviously reflects a particular, as distinguished from a general, application of the term, and, in holding that the metal bushings were not substitutes for the jewels within the meaning of the tariff provision, our appellate court pointed out that the only quality which would cause a jewel to be selected over a bushing in a given instance was its hardness. To be a substitute for a jewel, the court reasoned, a device must possess this quality, and as the imported metal bushings did not, they were held not to be substitutes for jewels.

Much the same sort of reasoning applies to the situation at bar. Congress made certain footwear dutiable upon the basis of the material of which the upper was composed in chief value. It named or described some materials and provided that substitutes for any of those materials should be considered in the same manner as the materials enumerated. It is quite obvious, as was held in *Tai Lung Co.* v. *United States*, 18 C. C. P. A. (Customs) 35, T. D. 44004, that the term "substitutes" did not mean "that any material would be a substitute if uppers were made of it and used for the purpose of holding the footwear to the foot." In other words, the term refers to substitutes for the *materials* enumerated in the tariff provision, and not to substitute for *uppers*.

This last point is important. It is a recognition that Congress did not intend that the provision should be applicable to footwear no matter of what material the upper was composed—if it had so intended, it would have used language to that effect. On the contrary, it enumerated certain materials and excluded all others except those which are substitutes for the materials enumerated.

Consequently, Congress must have considered that there were three classes of materials which might be used in footwear uppers, i. e., (1) the materials enumerated, (2) substitutes therefor, and (3) other materials. Classes (1) and (3), although having the same use, just as the metal bushings and the jewels in the *Bulova* case did, nevertheless would have different names and different primary, basic, or essential characters. The materials covered by class (2), the substitutes for class (1), would have different names from those of class (1), but their primary, basic, or essential characters would be the same as those of class (1), although in some other respects they might be different.

To bring these concepts to the situation at bar, it seems clear that it is a *sine qua non* of a textile that it be a woven fabric or material or a material capable of weaving. That is its essential character, and it follows that a substitute for a synthetic textile would necessarily have to exhibit that character.

Defendant has cited the decision of our appellate court in the case of *United States* v. *Julius Wile Sons & Co., Inc.*, 36 C. C. P. A. (Customs) 99, C. A. D. 404, for the statement therein that—

* * * Obviously a thing may be used as a substitute for another without being similar to the thing for which it is used as a substitute.

While it might appear that this statement is at variance with our view as stated above in this case, we note that it was made as an observation with respect to the use of the term "substitute" as given on a label found on an illustrative exhibit in that case. It did not purport to define the meaning of the term "substitutes," as used in the tariff act, and we are of the opinion that it is not controlling authority contrary to the position we have taken here with respect to the meaning of the term "substitutes," as found in paragraph 1530 (e), *supra*.

We may take judicial notice of the fact that plastics, such as the polyureathane foam material here involved, have taken their own place among the useful materials of the world and are used in many applications as materials of choice and not as substitutes for other materials. An inspection of the polyureathane foam portion of the upper in plaintiffs' illustrative exhibit 1 shows it to be of that nature. It does not suggest a substitute for a synthetic textile; it exhibits its own individual character of a plastic foam material.

The situation in this case is very similar to that which obtained in the case of *W. J. Byrnes & Co. of N. Y., Inc., et al.* v. *United States*, 38 Cust. Ct. 339, C. D. 1884, involving slippers with paper uppers. We there held that paper was not a substitute for any of the materials named in the provision in paragraph 1530 (e) of the tariff act, under which the merchandise had been classified by the collector.

In the brief filed in its behalf, counsel for the defendant argues that, inasmuch as the uppers of the slippers in the case at bar were composed of polyureathane foam *and* cotton twill, the burden was on the plaintiffs to establish that such *combined* materials were not a substitute for synthetic textile. We think this argument is without merit. The determinant of classification under the provision in question is the material of which the upper is "composed wholly or in chief value." That language refers to "that component material which shall exceed in value any other *single* component material of the article" [italics added]. See paragraph 1559, Tariff Act of 1930, and *Swiss Manufactures Association, Inc., et al.* v. *United States*, 39 Cust. Ct. 227, C. D. 1933. There does not seem to be any dispute but that, as between the cotton twill and the polyureathane foam of the upper, the latter was the single material of which the uppers were in chief value composed, and, consequently, was the material which controlled the classification.

For all of the foregoing reasons, we are of the opinion that, insofar

as the collector based his classification directly upon the provisions of paragraph 1530 (e) cited, it was erroneous.

Plaintiffs have urged, and defendant has not denied, that, in this situation, there is no provision of the tariff act under which the merchandise is directly classifiable. Seemingly, there is no provision which by name, description, composition, or use could be considered a tariff enumeration of merchandise such as that at bar. Recourse, therefore, must be had to the similitude clause of paragraph 1559 (a), which, as amended, reads as follows:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

It is at once apparent that the article enumerated in the dutiable portion of the tariff act which the slippers or scuffs at bar most resemble in the use to which they may be applied is footwear, provided for in paragraph 1530 (e). In that provision, as originally enacted, two types of footwear were enumerated:

(1) Footwear, wholly or in chief value of leather, and

(2) Footwear, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials.

A subsequent change in the language effected by the Act of July 8, 1954 (68 Stat. 454) is not material here. However, the provision for footwear, wholly or in chief value of leather, was modified by the Presidential proclamation reported in T. D. 51802 to decrease the rate of duty applicable to "slippers for housewear" to 10 per centum ad valorem.

Plaintiffs have offered evidence to the effect that the design of illustrative exhibit 1 is a copy of the familiar leather scuff, or bedroom slipper, without a back. Plaintiffs, therefore, contend that the scuffs at bar most resemble leather "slippers for housewear" and should be classifiable for duty purposes under that provision, by virtue of the similitude clause in paragraph 1559, as amended, *supra*.

Although no evidence was offered on the point, we are of the opinion that we may take judicial notice of the fact that the slipper commonly known as a "scuff" is made of other materials besides leather and that it often appears with uppers made of materials such as those enumerated in the provision under which duty was here taken.

From this fact, it would appear that the article at bar resembles, in point of use, not only footwear, wholly or in chief value of leather,

but also footwear, with uppers composed of cotton, wool, etc., or substitutes therefor.

In such situation, the last clause of paragraph 1559 (a), reading:

> * * * and if any nonenumerated article equally resembles in that particular [i. e., use] two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed

becomes operative.

We think it is manifest that the polyureathane foam material which is the determinant of classification in this case more closely resembles leather than it does cotton, wool, etc. We, therefore, hold the merchandise at bar to be properly dutiable, as claimed by the plaintiffs, at the rate of 10 per centum ad valorem under the provision in paragraph 1530 (e) of the Tariff Act of 1930, as modified by the Presidential proclamation reported in T. D. 51802, for "footwear * * * made wholly or in chief value of leather, not specially provided for: * * * Slippers for housewear," by virtue of the similitude provisions of paragraph 1559 (a) of the said act, as amended by the Customs Simplification Act of 1954.

Judgment will issue accordingly.